## A. H. COLEMAN ET AL. v. C. L. THURMOND.

### (Case No. 1372.)

1. JURISDICTION — LIMITATION.— The town of Victoria, owning certain lands outside of the town proper but within the corporate limits, caused it to be surveyed into farm lots separated by streets, and sold lots O and P, separated by a street, the deeds calling to run with the street. Subsequently by statute the limits of the corporation were reduced, leaving these lots outside, the statute providing that the streets should remain set apart for public use. The owner of lots O and P having united them in one enclosure, the county commissioners of Victoria county ordered the fence removed, and the plaintiff claiming the entire enclosure as his property, brought this suit to enjoin the enforcement of the order. *Held,*

(1) That the suit involved the title to real estate, and that the district court had jurisdiction.

(2) That the deeds from the town conveyed no title to the street, and that the plaintiff therefore acquired no title by adverse possession for five years.

(3) That the title by the party in possession under the ten years' limitation, because such possession only continued ten years when counted against the county as well as the city, and against the former, being a subdivision of the state, the statute no more runs than against the state itself.

APPEAL from Victoria. Tried below before the Hon. H. Clay Pleasants.

This case involves the question whether the statute of limitation will run against a town or county in favor of one who holds or claims a public street adversely.

The testimony shows that four leagues of land were originally conceded to Martin De Leon for the foundation of the town of Guadalupe de Victoria, with power in the town council to sell any portion of the same and appropriate the proceeds thereof to the erection of certain public buildings.

Subsequently, December 10, 1841, it was enacted by the congress of the republic:

"Sec. 4. *Be it enacted, etc.,* That the title to the four leagues of land heretofore conceded by the state of Coa-

huila and Texas to citizen Martin De Leon, for the foundation of the town of Guadalupe de Victoria, is hereby ratified and confirmed, and the said four leagues of land, or the part and parts thereof remaining unsold, are hereby acknowledged·and declared to be the property of the present corporation of the town of Victoria and their successors in office, in trust forever for the use and benefit of the citizens of said town."

Previously to 1850 the authorities of the town caused that portion of the four leagues outside of the town proper to be surveyed into blocks and farm lots, with streets separating the same, and sold the blocks and lots, but reserved the streets for the use of the public. They also caused a map to be made, showing the blocks, lots and streets. The lines of the streets were actually run upon the ground, and when through timber were marked· upon the trees. Among other farm lots which were sold were lot O, containing forty-seven and seventy-three one-hundredths acres, and adjoining lot P, containing twenty-eight and six-tenths acres. These two lots were separated by one of these streets, and this street constitutes the subject-matter of this controversy

These two lots O and P were conveyed by the town of Victoria to J. B. Ragland, now deceased — lot O in 1851. The calls of this deed, so far as concerns the street in controversy, are to run from a point on the river (at east end of lot O), "S. 78 deg. 30 W. 200 varas to the junction of Goliad road and street, a stake from which an elm 12 inches in diameter; marked A, bears S. 48 deg. E. 6½ varas; thence S. 45 deg. W. with street 727½ varas to stake in Ragland's cow pen; thence S. 45 deg. E. with Ragland street."

Lot P. was conveyed to him in 1855, and the metes and bounds of said lot according to the calls of the deed are as follows: "Beginning at the junction of the Goliad road and street leading from farm lots, a stake, from

which an elm 10 inches in diameter, marked X with 3 lines below, bears S. 31 deg. W. 8½ varas, and a hackberry 6 inches in diameter, marked I with 2 lines below, bears S. 81 deg. W. 3¼ varas; thence S. 45 deg. W. with street 496 varas to prairie, 696 varas to Ragland's street, to a stake in prairie; thence north 45 deg. W. with Ragland's street 464 varas to stake in the south boundary of Goliad road, from which a hackberry 10 inches in diameter marked I with 4 lines above, bears S. 45 deg. E. 8¾ varas, and a mulberry 5 inches in diameter, marked I with 5 lines below, bears S. 64 deg. E. 4¼ varas; thence north 78 deg. 30 E. with the Goliad road 336½ varas to place of beginning."

It will be observed that the field notes of both these surveys call to run with the street and not to include it.

Ragland died in 1867, and his administrator conveyed both these lots to Brownson in January, 1870, and Brownson in 1878 conveyed them to appellee, C. L. Thurmond. Neither the deed to Brownson nor that to Thurmond purported to convey the street. The court below expressly finds that the Brownson deed did not purport to convey the street, and the statement of facts shows that the subscription in the two deeds was substantially the same.

In 1853 Ragland commenced cultivating part of the street in controversy, and from that date until the institution of this suit some portion of it, including the eastern part, was enclosed in the field of Ragland and those who held title under him. The court, however, finds that neither the possession of Ragland nor of his administrator—which continued until January, 1870—was adverse to the claim of the town; but that the possession of Brownson and Thurmond was.

On March 19, 1879, the legislature of the state, by special act, amended the charter of the town of Victoria, and restricted the jurisdiction of the corporation to the

one mile square known as the town proper; but provided "that all streets, alleys, roads or highways, as heretofore laid out or established within the territory relieved from the jurisdiction of the corporation under this act, are declared to be so set apart for public use, and shall remain forever as so established; *and provided further,* that all lots or parcels of lots of land or subdivisions of the same which at the time of the passage of this act did belong to the said corporation of the town of Victoria, situated in said territory, cut off under this act from the jurisdiction of the aforesaid corporation, shall remain the property of the said corporation of Victoria."

This act took effect ninety days from April 14, 1879 — date of adjournment of the legislature, say on July 4, 1879.

August 26, 1880, the commissioners' court of that county, having assumed jurisdiction, under said act, of the streets of said town lying without the limits of the town proper, and including the one in controversy, upon the application of sundry citizens, ordered this street to be opened and cleared of all obstructions. Appellee Thurmond claiming that he was the owner of it, instituted this suit against the county judge and county commissioners to enjoin the execution of this order of the commissioners' court. An injunction was granted by the district judge in vacation; at June term, 1881, the cause was tried by the court without a jury, and a decree was rendered making the injunction perpetual. The defendants appealed.

*Glass & Callender,* for appellants.

*Lackey, Stayton & Kleberg,* for appellee.

I. Where the manner in which the commissioners' court should establish and open a public road involves

the question of title to the land over which such road passes, the commissioners' court has no jurisdiction to try such question of title, but such question of title should be determined by the district court, and it may issue such writs as are necessary for the enforcement of its jurisdiction.    R. S., arts. 1117–1123.

II.  The right to the use of a street which may be vested in a town or its citizens, and by them to be upheld for the use of the public, is not exempt from the operation of the statute of limitations, or from the presumptions arising from adverse claim and possession.    City of Galveston v. Menard, 23 Tex., 409, 410; 10 Barb., 155, 156; Angell on Highways, p. 403, sec. 324.

III.  Where land is granted for the establishment of a town, the title to such land passes out of the state by virtue of the grant and the confirmation of the same and vested in the grantee, and it matters not whether such grantee be an individual or a corporation; and when the original grantee lays off such land into blocks, lots and streets, the state does not thereby become the real owner of the streets, but the title to the fee of the same remains in the original grantee, subject to an easement which the public may have acquired by such dedication in or over such streets, until the title to the blocks adjoining such streets are conveyed by the original grantee, and then the title to the fee in the streets bounding such blocks passes to the purchaser thereof, subject only to the rights of the public to an easement which they may have acquired, and the right to this easement over such street may be lost by prescription or the operation of the statute of limitations.    City of Galveston v. Menard, 23 Tex., 409; 10 Barb., 155, 156; Tyler on the Law of Boundaries, etc., p. 1125; Banks v. Ogden, 2 Wall., 57–68; 3 Kent's Com., 433, 434; White v. Godfrey, 97 Mass., 472.

BONNER, ASSOCIATE JUSTICE.— The first question presented for our decision involves that of the jurisdiction of the district court to control the proceedings of the commissioners' court in the matter of the regulation of the street in controversy.

The proceedings on the part of the commissioners' court was not, in the first instance, to condemn the land for the street, but to have it opened under the original dedication and survey of the town.

Appellee Thurmond claims that the title had vested in him. Hence the suit involved the title to land, and this gave the district court jurisdiction. Const. 1876, art. V, sec. 8.

The second and more important question in the case, and upon which judgment was rendered in favor of Thurmond, relates to his right to acquire the title to the street by virtue of the statute of limitations. Under the evidence the statute did not commence to run until the adoption by congress of the constitution of 1876, March 30, 1870.

From that date until the act of the legislature took effect, July 4, 1879, by which the state, through its subdivision, the county of Victoria, assumed jurisdiction over this street, and withdrew it from the town, more than five but less than ten years had elapsed.

Did Thurmond by his own and the adverse possession of Brownson, under whom he claimed, acquire title to the street by the five years' limitation, during the time the town had jurisdiction over it?

In the case of the City of Galveston v. Menard, 23 Tex., 349, it was held that adverse possession of a street for five years, with the requisites prescribed by the statute, would confer upon the possessor full title. It was, however, said that the possession which will give title to a street, under the statute, should be both under claim of deed and adverse. 23 Tex., 409.

We are not disposed to extend the doctrine of that

case. 2 Dillon on Mun. Corp. (3d ed.), §§ 667–676, citing numerous authorities in notes.

In the one now before the court, Thurmond had no deed to the street, but simply to the farm lots O and P, between which it ran. Hence one of the essential requisites of the statute, and of the above decision, is wanting, and Thurmond cannot claim under the five years' limitation.

If it be admitted for the purposes of the present decision, that, in a proper case, he could invoke the statute of ten years, then do the facts show that he had such ten years' limitation ?

From March 30, 1870, the date when the statute began to run, to July 4, 1879, the date when the act of the legislature withdrawing from this street the jurisdiction of the town of Victoria took effect, was less than ten years. Hence, to complete the bar of ten years before the order of the commissioners' court complained of, August 26, 1880, the statute must not only be counted against the town but against the county also. This raises the question whether, in such cases, the statute would run against a county.

There is a distinction between municipal corporations proper, such as chartered towns and cities, or towns and cities voluntarily organized under general incorporating acts, and involuntary *quasi* corporations, such as counties. "Municipal corporations proper are called into existence either at the direct solicitation or by the free consent of the persons composing them, for the promotion of their own local and private advantage and convenience. On the other hand, counties are at most but local organizations, which, for the purposes of civil administration, are invested with a few functions characteristic of a corporate existence. They are local subdivisions of the state, created by the sovereign power of the state, of its own sovereign will, without the particular solicitation, con-

sent or concurrent action of the people who. inhabit them." . . . "A *municipal corporation proper* is created mainly for the interest, advantage and convenience of the locality and its people; a *county organization* is created almost exclusively with a view to the policy of the state at large, for purposes of political organization and civil administration, in matters of finance, of education, of provision for the poor, of military organization, of the means of travel and transport, and especially for the general administration of justice. With scarcely an exception, all the powers and functions of the county organization have a direct and exclusive reference to the general policy of the state, and are, in fact, but a branch of the general administration of that policy." 1 Dillon on Mun. Corp. (3d ed.), § 23; id., § 25, citing authority in notes.

Under our statute of limitations as to lands, the right of the state is not barred. R. S., art. 3200; Pasch. Dig., art. 4623.

As the state would not be barred in such cases, neither would the county, under our general statute on this subject, it being but a subdivision of the state, and having but a general control and authority over the streets in trust only for the use and benefit of the state at large.

The judgment of the court below is reversed and judgment ordered to be rendered in this court dissolving the injunction and dismissing the suit; the costs in both courts to be taxed against appellee Thurmond.

REVERSED AND RENDERED.

[Opinion delivered March 24, 1882.]

Associate Justice STAYTON did not sit in this case.