## G. H. NEWNOM v. GEORGE E. WILLIAMSON.

Decided June 5, 1907.

**1.—Stenographer's Act, Constitutional.**

That part of section 5 of the Stenographer's Act, passed by the 29th Legislature, which provides "that original documentary evidence, maps, plats or other matters introduced in evidence, and if embraced in the stenographer's report, may be made part of the record of said cause by written direction of the court, which may be sent up in the original form if requested by either party to the suit, or transcribed by the clerk with other parts of the record therein," is not void because in derogation of section 3, article 35, of the Constitution which provides that no bill shall contain more than one subject, which shall be expressed in its title.

**2.—Appeal—Original Documents Parts of Record, When.**

To authorize the sending up of original documents and to constitute them a part of the record on appeal, it is necessary that a written order to this effect be made by the trial court during the term at which the case was tried. A written order by the trial judge to the clerk of his court, after the adjournment of the term, to send up such original papers, will not have the effect of making them a part of the record, or entitle them to consideration.

**3.—Imperfect Record—Instructed Verdict—Burden of Proof—Presumption.**

Where the documentary evidence used on the trial of a boundary case, is stricken from the record on appeal and the record is therefore incomplete, it will be presumed in favor of an instructed verdict for the plaintiff (appellee), that the entire evidence on the trial was such as to justify the court in giving such peremptory charge.

Appeal from the District Court of Jackson County. Tried below before Hon. J. C. Wilson.

*James & Yeiser,* for appellant.

*Proctors, Vandenberge & Crain,* for appellee.

NEILL, ASSOCIATE JUSTICE.—We are met at the threshold of this appeal by a motion of the appellee to strike out the statement of facts, which must be disposed of before considering the case.

It appears from the record that appellant has not attempted to prepare and have incorporated a statement of facts under the provisions of arts. 1379 to 1381, inclusive, of the Revised Statutes of 1895; but that, in lieu of such statement, he seeks to have made a part of the record and have considered as a statement of facts, the stenographer's report of the oral evidence, and accompanies the same by a number of written documents, such as sketches, maps, plats, copies of field notes and other instruments, not embraced in the stenographer's report; nor transcribed by the clerk with other parts of the record, which are sent up in the original form, though in no way attached to it. Wherefore, it is insisted by the appellee that, inasmuch as it is apparent from the record that the cause was tried upon both oral and documentary evidence, there is no complete statement of facts properly in the record, neither the documentary nor oral evidence being presented in the proper form, to be considered on this appeal.

It is first urged in this contention that the part of the stenographer's Act, which provides "that original documentary evidence, maps, plats or other matters introduced in evidence, and if embraced in the stenographer's report, may be made a part of the record of said cause by written direction of the court, which may be sent up in the original form if requested by either party to the suit, or transcribed by the clerk with other parts of the record therein," (Act 29 Leg., sec 5, p. 220) is void because in derogation of section 3, art. 35 of the Constitution.

Before entering upon a consideration of the question involved by this contention, the writer wishes to say that, notwithstanding the difficulty the Courts of Civil Appeals have encountered in their efforts to administer the law under the Stenographer's Act,—which has caused their judges to "groan and sweat under a weary load," and given Justice the blind staggers—an earnest effort will be made by the members of this Court to do justice to the Act as it stood before the Twentieth (Thirtieth?) Legislature demonstrated the wisdom of Thomas Buckle, as well as its own, in his observation, that the greatest benefit to society derived from leg-

islation is the repeal by subsequent legislatures of prior legislative enactments, by so emasculating them that they will no longer stifle justice, bewilder judges nor plague their inventor.

The article of the Constitution referred to is as follows: "No bill . . . shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an Act which shall not be expressed in the title, such Act shall be void only as to so much thereof as shall not be so expressed." The title of the bill in question is: "An Act to provide for the appointment of a competent stenographer to report cases, and to make the report of such stenographer, when filed and approved, the statement of facts of the oral evidence in the case; and to provide for the compensation of such stenographer."

Is that portion of the Stenographer's Act, which provides for original documentary evidence, etc., being made a part of the record and sent up in the original form with the record on appeal, within the meaning of the article of the Constitution quoted, expressed in the title? Before entering upon a discussion of the question, we will enunciate the principles of law which shall guide us in the consideration.

The object of the constitutional requirement as to the title is that the legislators and others interested shall receive direct notice, in immediate connection with the Act itself, of its object, so that they may be put upon inquiry as to the provisions and their effect. Commonwealth v. Kebort, 61 Atl. Rep. (Pa.) 895; Cooley's Constitutional Limitations, 117. "The intent of this provision, was to prevent the union, in the same Act, of incongruous matters, and objects having no connection, no relation. And with this it was designed to prevent surprise in legislation, by having matter of one nature embraced in a bill whose title expressed another." State v. County Judge, 2 Iowa, 280. Says Cooley on Const. Limitations (7 ed.) p. 205. "It may be assumed as settled that the purpose of these provisions was: first, to prevent hodge-podge or 'log-rolling' legislation; second, to prevent surprise or fraud upon the legislature by means of provisions in bills of which the titles gave no intimation and which might, therefore, be overlooked and carelessly and unintentionally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire. . . . The general purpose of these provisions is accomplished when a law has but one general object, which is fairly indicated by the title. . . . The generality of the title is therefore no objection to it, so long as it is not made a cover to legislation incongruous in itself, and by which no fair intendment can be considered as having a necessary or proper connection."

In Doeppenschmidt v. International & G. N. Ry. Co., 100 Texas, 532, the Supreme Court, in testing an Act by the same constitutional provision, after reiterating the proposition: "This provision has been frequently construed to require only the general

or ultimate object to be stated in the title, and not the details by which the object is attained. Any provision calculated to carry the declared object into effect is unobjectionable, although not specially indicated by the title," (quoted in Johnson v. Martin, 75 Texas, 33) says: "We are of the opinion that the rule, the expression of one thing excludes another, should not be applied to the title of the statute. It would be burdensome, if not intolerable, to require that the title should be as full as the Act itself. The word title implies that no such requirement exists. The purpose of the constitutional provision is merely to reasonably apprise the legislators of the contents of the bill, to the end that surprise and fraud in the legislature may be prevented."

Any one reading the title of the Act in question, with the least familiarity with judicial procedure, would know that many cases would be tried in which documentary evidence, as well as oral testimony, would necessarily be introduced, and, that if such evidence could not be incorporated in the record in connection with the stenographer's report of the oral testimony, there could be no such statement of facts as the law contemplates. In other words, it would be apparent to any one that the report of the stenographer of the oral evidence could not in many cases be a complete statement of facts, but only of the oral evidence. Nor can it be implied from the title of the Act that the stenographer's report should be confined to the oral evidence. For it shows that the Act provides "for the appointment of a competent stenographer *to report cases,*" which is broad enough to embrace all the proceedings had during the trial of a cause. That the remainder of the title only provides for making the report, when filed and approved, the statement of facts of the oral evidence in the case, does not exclude the idea that original documentary evidence, maps, plats, etc., if embraced in the stenographer's report, is a part of the record of the cause as is provided in sec. 5 of the Act. For, as is said in Doeppenschmidt v. Railway, supra, "the rule, that the expression of one thing excludes another should not be applied to the title of a statute."

It is only when a transcript of the stenographer's report is made at the request of either party to the suit, that such transcript, if approved and signed by the judge, is required to be filed among the papers of the cause, and becomes a record therein. Therefore, if the contention of the appellee should be upheld, it would rest in the power of either party by making such request to the stenographer to deprive the other party of all the documentary evidence in a case.

Let us illustrate the effect of this by supposing the simplest case of trespass to try title: A sues B to recover possession of a tract of land. He has a complete chain of title from the sovereignty of the soil down to himself. B is a naked trespasser. A offers in evidence all his documentary evidence, which, if admitted, would show a complete title in himself. But the court erroneously excludes one of his deeds, and, then, upon the assumption that there is a hiatus in A's chain of title, peremptorily instructs a verdict for

the defendant, and a judgment is rendered in his favor upon the verdict returned in obedience to the court's charge. A appeals from the judgment, and at B's request the stenographer's transcript of the report of the case is made out, filed among the papers, made a part of the record and sent up as the record of said cause of the report of the testimony therein. This report embraces all of the original documentary evidence introduced on the trial, as well as the excluded deed, the ruling of the court upon the objection made by defendant to its being admitted in evidence, and the exception taken by the plaintiff to the ruling of the court sustaining such objection —all of such documentary evidence being made a part of the record in the cause by written direction of the court and sent up in the original form. A motion is then made in the Appellate Court to strike from the record the stenographer's report and documentary evidence upon the ground that the title of the Act, by virtue of which it was sought to be made a part of the record, and sent up on appeal as the statement of facts and bill of exceptions, did not embrace the subject of making such documentary evidence a part of the record which could be considered on appeal. The motion is sustained, and, there being no evidence in the record of plaintiff's title, nor anything to show the erroneous exclusion of his deed, the judgment is affirmed upon the presumption that, in the absence of anything to the contrary, it is correct. Thus justice is mocked, and A's property wrongfully taken from him "by due process of law" and given to one who hasn't a shadow of right to it, by tribunals constituted and maintained for the purpose of protecting men in the enjoyment of life, liberty and property. We are not willing to give the Act in question a construction that would work such havoc in our State. It is "fashioned so slenderly" on principles of reason, take it up as tenderly as we may, it is, on account of its incongruity, difficulty of construction and observance, bound to work injustice and iniquity in many instances and cause courts that administer it to blush with shame that an Act which has such effect must be taken as the law. So much for the constitutional phase of the Stenographer's Act. We will now turn from it to consider other grounds of objection urged by the motion.

Again, it is contended that, conceding the Stenographer's Act is constitutional, the original documentary evidence can not be considered as a part of the record because the order directing the clerk to send it up to the Court of Civil Appeals with the transcript of the record was not made by the court, but by the District Judge during vacation. The order referred to, omitting the style and number of the case, is as follows:

"In the District Court of Jackson County, Texas. At the request of the defendants in the above numbered and entitled cause the clerk of the District Court of Jackson County, Texas, is hereby directed to send up with the transcript in this cause to the Court of Civil Appeals for the First Supreme Judicial District of Texas, at Galveston, all of the documentary evidence offered by all of the parties to this suit on the trial of this case, and also all the maps and sketches which were offered in evidence by all of the parties to the

suit, the same to constitute a part of the record in this case on appeal.

"This written direction is now given to the clerk for the reason that the clerk, after filing an order prepared by the defendants in this cause when the motion for new trial herein was overruled, neglected to enter said order in the minutes of this court, which said order is a file paper in this case and provides for the sending up of said documentary evidence, maps and sketches to the said Court of Civil Appeals.

"Witness my hand as Judge of said Court this the 4th day of May, 1906.

James C. Wilson,
Judge 24th Judicial District."

So much of section 5 of the Stenographer's Act as is pertinent to this contention is as follows: "In case an appeal is taken from the judgment rendered in said case, said original stenographer's transcript shall be sent up as the record of said cause as the report of the testimony therein, the cost of such transcript paid by either party to be taxed against the party losing on such appeal; and no other record of said testimony shall be sent up on appeal; provided, any original documentary evidence, sketches, maps, plats or other matters introduced in evidence, and if embraced in the stenographer's report, may be made a part of the record of said cause by written direction of the court, which may be sent up in the original form if requested by either party to the suit, or transcribed by the clerk with other parts of the record therein."

It is apparent from this, that it is essential, in order to make any original documentary evidence, sketches, maps, etc., a part of the record of a cause and authorize its being sent up on appeal in its original form, it must be (1) "embraced in the stenographer's report," and (2) a written direction of the court that it be done. For unless embraced in the stenographer's report the court is without authority to make the order, and, if embraced in the stenographer's report, without such order of the court, it can neither be made part of the record nor sent up with it on appeal.

What, in reference to original documentary evidence, is meant by being embraced in the stenographer's report? This is a mighty hard question. Ordinarily, its evident meaning would be that the original document itself should be incorporated in his report. But as section 3 of the Act only makes it the "duty of the official stenographer to attend all sessions of the court, to take full stenographic notes of the *oral evidence* offered in every case tried by the court, together with all objections to the admissibility of testimony, the rulings of the court thereon and all exceptions taken to such rulings; to preserve all official notes taken in said court for future reference, and to furnish either party to the suit a transcript of such evidence or other proceedings," such meaning could have hardly been intended in reference to all the original documentary evidence, maps, plats, etc., because the Act does not require it to be reported by the stenographer. Yet, original documentary evidence, maps, plats, etc.,

may be made, in the trial of a cause, subjects of "objections to admissibility of testimony, the rulings of the court thereon and of exceptions taken to such rulings," which the stenographer is required to report, and in making such report, it may often become necessary, in order to make the objections to testimony and rulings of the court intelligible, to *embrace* such original documentary evidence as was the subject of such objections and rulings, in the report of the stenographer. But this construction would prevent much original documentary evidence essential to a decision of the issues in a case from being embraced and, consequently, its being sent up with the record on appeal. But if this be not the construction, what can it be? It is more difficult than the three things, yea the four, which Solomon could not understand. And the stunned and baffled mind of the writer, in despair of an answer, leaves it in their company, and, conceding *pro hac vice* that the original documentary evidence sent up with the record in this case was embraced in the stenographer's report, passes on to consider whether the order of the District Judge, directing the clerk to send up with the transcript in the case all documentary evidence offered by all the parties to the suit, was, within the contemplation of the Stenographer's Act, such a written order of the court as made such original documentary evidence a part of the record in the case, and to authorize its being sent up.

No written order of the court making the original documentary evidence, sketches, maps, etc., a part of it, appears in the record exhibited in the transcript thereof. That the written order of the trial judge to the clerk to send up such original documentary evidence, is not such an order is apparent from its face. Such a direction is unauthorized, unless an order of the court making such original documentary evidence a part of the record has been previously made. For it is clear that such evidence must be made a part of the record in the manner prescribed by the statute before the clerk can be directed by the court to send it up on appeal, as a *part* of the *record*. Indeed, if it be made a part of the record by the written direction of the court, no further direction is necessary by the court to authorize its being sent up on appeal. For when it becomes a part of the record, by reason of the written direction of the court, it "may be sent up in the original form if requested by a party to the suit, or transcribed by the clerk with other parts of the record therein." But the *sine qua non* of its being sent up in its original form, or transcribed by the clerk with other parts of the record, is the written direction of the court that it be *made* a *part* of the *record*. It appears, then, that the written direction of the trial judge, copied above, to the clerk was without authority of law, because (1) no written direction had been previously made by the court making such original documentary evidence a part of the record, and (2) the court had adjourned and the direction to the clerk was that of the judge, and not of the court.

It may be that, had this written direction been made during the term of court at which the cause was tried, it could, by implication, be construed as a direction of the court making the original doc-

umentary evidence, maps, plats, etc., a part of the record in the case, as well as embodying a request of defendants to the clerk to send up such evidence in its original form. But there is no statute authorizing such an order to be made in vacation, and the rule is plain "That all judicial business must be transacted in court, whether there is any express direction to that effect or not, and such business as may be transacted out of court is exceptional, and must find express authority in a statute." 4 Enc. P. & P. p. 337. See also Accousi v. Stowers Furniture Co., 83 S. W. Rep., 1104 and authorities there cited. Nor can the explanation given by the judge for giving such direction be taken either as evidence that the court had directed, in the manner prescribed by the statute, such original documentary evidence be made a part of the record in the case, or as the entrance of such order, if made, *nunc pro tunc*. See Accousi v. Stowers Furniture Co., *supra*. We have therefore concluded that none of the original documentary evidence, sketches, maps, plats, etc., sent up by the clerk with the record in this case, is or can be taken by us as a part of the record in this cause, and that all of such evidence should be expunged.

But we are of the opinion that the stenographer's transcript ought, in so far as it contains the oral testimony, to be taken and considered as a statement of facts; (Eikel v. Randolph, 6 Texas Civ. App., 421; Mason v. Rodgers, 83 Texas, 391) for we have held that a certificate of the trial judge approving a transcript of the evidence prepared by the official stenographer, though not submitted to the adverse party, should be considered. Gulf, C. & S. F. Ry. Co. v. Pearce, 95 S. W. Rep., 1133. Though this transcript does not embrace the documentary evidence, sketches, maps, plats, field notes, etc., it is apparent from it that such evidence was introduced; for the oral testimony relates to such evidence, and it is manifest from such transcript, as well as from the nature of the case, the issue between the parties could not be determined in the absence of such documentary evidence, the transcript of the stenographer as to the oral evidence will be considered for what it is worth regardless of the original documentary evidence.

Having thus disposed of the motion, we are brought to the consideration of the main case. It was a suit instituted by appellee against appellant and S. T. White in the form of an action of trespass to try title to two tracts of land, each of which is situated partly in Jackson and partly in Matagorda Counties, and is described by metes and bounds. Besides such description one tract is described as being a portion of the following original surveys: of two surveys in the name of J. M. Smith; of a survey in the name of John Smith; of a survey in the name of Rynd Lawder. And the other tract as being a portion of the western J. M. Norman survey, and Rynd Lawder survey. Plaintiff's petition then alleges that all the original surveys above mentioned were patented by the State of Texas prior to January 1, 1875, more than a quarter of a century prior to the locations asserted by defendants embraced in them; and contains all the essential allegations in an action of trespass to try title.

The defendant, White, after pleading not guilty, filed a cross-

bill against plaintiff and his codefendant claiming title to the second tract described in plaintiff's petition.

The appellant, J. D. Newell, answered both plaintiff's petition and defendant White's cross-bill by a plea of not guilty, and, by a cross-bill against each, claimed title to the property in controversy.

The case was tried before a jury whom the court, after hearing the evidence of both parties, peremptorily instructed to return a verdict in favor of the plaintiff. And from a judgment entered upon a verdict returned in obedience to such instruction, the defendant Newnom has alone appealed.

*Conclusions of Fact.*—While we are required to file conclusions of fact, it is difficult to comply with the requirement in the condition the record is left after excluding the documentary evidence. But this difficulty is somewhat obviated by the following admission contained in appellant's brief: "It is admitted in open court by the defendants that unless the land in controversy was vacant, unappropriated public domain at the time defendant Newnom filed his application for a survey, and had his surveys made, and filed his applications to purchase and had the land in controversy awarded to him as a part of the public free school fund of the State of Texas, then, in that event, the plaintiff, Geo. E. Williamson, is entitled to recover the same; that is to say, the defendants admitted that if the land in controversy is lawfully included within the boundaries of any of the adjacent surveys as claimed by plaintiff Williamson, then defendant admitted his title to such surveys, and further admitted that he and his vendors have continuously had the land in controversy inclosed for more than ten years within an inclosure of more than 5,000 acres, claiming the same as excess by virtue of their patents, adversely to all persons."

In view of this admission upon whom did the burden rest of proving that the land in controversy is included within the boundaries of any of the adjacent surveys claimed by the plaintiff? For this was the issue in the case, as is shown by the admission, as well as by the evidence which remains in the record. This being the issue, it was only in the event of an affirmative finding upon it that plaintiff could recover. And he being the actor in the case the burden of proving the affirmative of such issue was upon him. Had the entire statement of facts been stricken from the record, it would be presumed in favor of the judgment that the evidence adduced upon the trial so clearly established the fact that the land lies within the boundaries of one or more of plaintiff's surveys that no reasonable mind could reach any other conclusion from the evidence. But with all the original documentary evidence expunged, it can not be determined from the testimony left in the record whether the state of the evidence was such as to induce only such conclusion. With the record in this condition, should the same presumption be indulged in favor of the judgment?

It seems to have been held in Mason v. Rodgers, *supra,* that where the verdict could only be sustained by evidence stricken from the statement of facts, its reversal should follow. However, it appears from the opinion in that case that the excluded evidence was con-

sidered, and it was held that with it the evidence was not sufficient to sustain the verdict. In view of this, that opinion upon the question is entitled to little, if any, consideration, and leaves the question open to be determined upon principle.

The appellee is not responsible for the condition of the record taken out by his adversary and sent up on appeal; nor chargeable with the inability of the appellant to procure a record of all the evidence adduced on the trial. In this case, the inability of the appellant to have the original documentary evidence, maps, plats, etc., considered as a part of the record on this appeal results from his failure to procure the written direction of the trial court that such original evidence be made a part of the record. It was not encumbent upon plaintiff to have such an order made by the court; nor is it here encumbent upon him to show from the depleted record procured by his adversary that his judgment is sustained by the evidence. But it was for the appellant to procure and bring before this court a complete record of the case, and, from it, demonstrate such an error in the judgment as would require its reversal. This he has failed to do. And to reverse the judgment would be to visit upon the plaintiff the fault of defendant for which the former is in no way responsible. It would be administering justice with vengeance to strike from the record, upon the motion of appellee, evidence which has been made no part of it, and, then, reverse his judgment because of the failure of appellant to take such steps as were necessary to make it a part of the record sent up on appeal, it appearing that he has only sent a part of the evidence upon which the judgment was rendered. Therefore, in view of this state of the record, we have concluded that the presumption should be indulged, in favor of the judgment, that the evidence adduced upon the trial showed that the land in controversy is beyond dispute within the boundaries of plaintiff's surveys. And, indulging such presumption, we so find.

*Conclusions of Law.*—The appellant's first and second assignments of error are as follows: "The trial court erred in withdrawing this case from the jury, and in instructing the jury peremptorily to find a verdict for the plaintiff, for the reason that the undisputed evidence of the witness Carrington for defendant shows that the vacancy claimed by defendant existed as claimed by him, and that it arose out of mistakes in the official maps in the Land Office, from which working sketches were furnished to the locating surveyors, and that no part of the land in controversy is covered by plaintiff's surveys as actually located on the ground from such erroneous maps and sketches."

"The trial court erred in withdrawing this case from the jury and in instructing a verdict for the plaintiff, for the reason that the only testimony of plaintiff shows that there is an excess as claimed by defendant in the land claimed by plaintiff, and that this excess is vacant land, not lawfully included in plaintiff's surveys, as they were actually located on the ground by the locating surveyors; but plaintiff's witness, by adopting a false theory, supported only by his assumption of facts not found by him, seeks to give this excess to plaintiff's

surveys by changing their form, the configuration of their boundaries and the area called for in their field notes."

It is apparent from these assignments, as well as from the propositions asserted under them, that it can not be determined, in the absence from the record of the original documentary evidence, maps, sketches, plats and field notes referred to in them, whether they are well taken or not. And as we have concluded that the presumption should be indulged in favor of the judgment that the evidence adduced upon the trial was sufficient to support it, we must also conclude that the court did not err in giving the peremptory instruction complained of by the assignments.

Our conclusions of fact and reasons given for finding them dispose of the third assignment of error, which is as follows: "The verdict of the jury and the judgment of the court herein are contrary to the law and unsupported by the evidence, in this, to wit, that the undisputed evidence shows that the maps of Matagorda and Jackson counties, in use when these locations were made, show the rear lines of the Newell, the Green and the Grayson leagues to be further south and east than they are actually located on the ground by the witness Carrington, and that said maps are erroneous; and the undisputed evidence also shows that to locate all of the adjoining and connecting surveys on the ground from known corners, giving to each the calls in its field notes, will correctly locate each survey and give it its full area, and create no conflicts, and change the form and length of lines of no surveys, and will leave the vacancy claimed by the defendant, by only disregarding the mistaken calls for the rear lines of the Newell, the Green and the Grayson leagues. Whereas, plaintiff's theory, unsupported by any competent testimony, is based solely upon the opinion of one witness, and will change the form of several surveys, giving them large excesses, and will create conflicts with old established surveys, which can be identified on the ground," adversely to appellant.

We much regret that the record before us is such as required us to thus dispose of all appellant's assignments of error; for we would have infinitely preferred to have decided the case upon its merits. And we trust that it is not inappropriate to say that if there has been a failure of justice in this case it is attributable rather to an almost incomprehensible Act of the Legislature, than to any fault either of counsel or the trial judge. The judgment is affirmed.

*Affirmed.*

Application for writ of error dismissed for want of jurisdiction.