### BITTER v. BEXAR COUNTY.　(No. 7238.)*

(Court of Civil Appeals of Texas. San Antonio. Oct. 22, 1924. Rehearing Denied Nov. 19, 1924.)

1. Statutes ⚖⇒121(7)—Subject-matter of statute requiring tax collector to account under provisions of Maximum Fee Bill held sufficiently embraced in its title.

Portion of Act July 28, 1919 (Laws 2d Called Sess. 1919, c. 64, § 2 [Vernon's Ann. Civ. St. Supp. 1922, art. 7688a]) amending Laws 1915, c. 147, § 3, so as to require tax collector to account for certain fees under maximum fee bill (Rev. St. 1911, c. 4, title 58, as amended by Acts Reg. Sess. 33d Leg. cc. 121, 142) held not unconstitutional because insufficiently embraced in title: "An act to amend * * * relating to duties of tax collectors * * * and the compensation of the collector therefor."

**2. Statutes ⬡109—Provisions of statute not unconstitutional if directly or indirectly within subject embraced by title.**

Provisions of statute should not be held unconstitutional as not embraced in title of act where they relate directly or indirectly to same subject, have mutual connection, and are not foreign to subject expressed in title.

**3. Counties ⬡213 — Claims against county must be presented and disallowed by commissioners' court before suit can be brought thereon.**

Claims against county must be presented to commissioners' court for allowance or disapproval, and, under Rev. St. arts. 1366, 1481, suit cannot be brought on a claim until so presented and disallowed.

**4. Set-off and counterclaim ⬡24—Defense to be available in set-off must be subsisting cause of action of which independent suit could be instituted.**

Defense to be available in set-off must be a subsisting legal cause of action on which independent suit could be instituted.

**5. Set-off and counterclaim ⬡24—County tax collector held not entitled to set-off against county's claims for fees improperly turned over to county.**

In county's action against tax collector to enforce accounting for fees, defendant *held* not entitled to offset claims against county for fees erroneously paid to it, which had never been presented to board of county commissioners as required by Rev. St. arts. 1366, 1481.

**6. Taxation ⬡557(2) — County held not to have approved tax collector's retention of fees, and not estopped to claim right to accounting.**

Tax collector who filed reports purporting to show all fees collected, but which did not include certain fees which he claimed right to retain, *held* not entitled to subsequently claim that county had knowledge of and approved his retention of such claims and was estopped from requiring an accounting because at time of such reports county judge and auditor had individual knowledge of his retention of such fees, and did not report it to county.

**7. Limitation of actions ⬡95(1)—Limitations do not begin to run against claims of county against tax collector for fees before notice of appropriation.**

Limitations begin to run on claims of county against tax collector for fees appropriated, if at all, from time collector's report should have been finally made out, and where such report does not disclose items appropriated by him, no limitation will run against county as to such items till commissioners' court had or could have had notice thereof.

**8. Limitation of actions ⬡41—Tax collector's claim against county for voluntary payments erroneously made held barred by limitations.**

Tax collector *held* not entitled to recover voluntary payments made to county under mistake of law, on cross-bill filed, in action by county for accounting, more than four years after date of such payments.

**9. Limitation of actions ⬡39(1) — County's claims against tax collector for appropriated fees accruing more than four years before suit held barred.**

Claims of county against tax collector for fees appropriated by him, which matured more than four years before filing of county's suit therefore, *held* barred by limitations.

**10. Limitation of actions ⬡57(5) — Limitations do not run against county on claims against tax collector until expiration of time within which collector could have made final settlement.**

Tax collector having until end of fiscal year to make final settlement of moneys collected by him, limitations do not begin to run against county on claims against collector until end of fiscal year during which such claims arose.

**11. Taxation ⬡567 — Tax collector's claim against county held improperly allowed as recoupment in county's action for fees appropriated.**

In county's action against tax collector for fees appropriated, claim of collector against county for commissions paid to it under mistake of law *held* improperly allowed as such.

On Motion for Rehearing.

**12. Judgment ⬡249 — Court cannot enlarge powers to administer equity without proper pleading.**

Trial court cannot enlarge its powers to administer equity without proper pleading, if it can do so at all.

**13. Taxation ⬡567—County may be required, as condition precedent to recovery, to recognize equitable rights, though affirmative judgment against it could not be had thereon.**

Though tax collector, defendant in county's action to recover fees appropriated, might not recover judgment on claim against county not presented to commissioners' court on proper pleading for equitable relief court might have required county, as condition precedent to recovery, to recognize equitable credits in favor of defendant.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Action by County of Bexar against John A. Bitter, wherein defendant filed cross-bill. From judgment unsatisfactory to both parties, defendant appealed, assigning errors and plaintiff filed cross-assignments. Reversed and rendered.

Denman, Franklin & McGown, of San Antonio, for appellant.

Birkhead, Lang & Beckmann, F. Stevens, and D. A. McAskill, all of San Antonio, for appellee.

COBBS, J. This suit was brought in behalf of Bexar county, appellee, against John A. Bitter, appellant tax collector of Bexar county, to recover $39,668.40, the aggregate amount of certain fees allowed by article 7691 of the Revised Civil Statutes of the state of Texas, 1911, it being alleged that ap-

pellant, during the several fiscal years from 1914 to 1923, inclusive, had collected said fees and not paid them over to the county, but retained them under a claim that under the law he was not required to account for same as part of the excess fees to be paid over to the county under the maximum fee bill.

Appellant defended upon the ground that he had paid over to the county, from time to time, various amounts to which he was entitled as compensation, and for which he was not accountable to the county under said maximum fee bill, and which sums had been paid over by him in the erroneous belief that he was accountable therefor under said maximum fee bill. The amounts paid, which he pleaded as recoupments, credits, or offsets against appellee's demand herein, amounted to the sum of $3,727.41. The trial court allowed credit to appellant for certain of those amounts and refused allowance of others.

The case was tried by the court without a jury, and the court made findings of fact and conclusions of law. Thereupon the trial court rendered judgment on March 27, 1924, in favor of appellee against the appellant for the sum of $19,710.50, with legal interest from varying dates on the several amounts making up that total. Both parties objected to the judgment, and the appellant has filed assignments of error and the appellee has filed cross-assignments.

The first and most important question of law presented by appellant is that section 3 of House Bill 40 of 1915 (Laws 1915, c. 147 [Vernon's Ann. Civ. St. Supp. 1918, art. 7688a]) required no accounting for fees under the maximum fee bill, and that the amendment thereof of July 28, 1919, which went into effect on the 20th day of October, 1919 (Laws 1919, 2d called Sess. c. 64 [Vernon's Ann. Civ. St. Supp. 1922, arts. 7687a, 7688a, 7688b]), and made all fees of the office of the collector to be accounted for under the provisions of the maximum fee bill, as excess fees, is unconstitutional, so far as it affects the appellant's rights, because the title of the act does not appropriately embrace such purpose. That part of section 3, of the act of 1915 (House Bill No. 40) in respect to the collector's fees, provides as follows:

"The tax collector shall, in addition to the compensation and costs now allowed by law, be entitled for making up the delinquent record or supplements thereto where necessary under this act the sum of five cents for each and every line of yearly delinquencies entered on said delinquent record or supplement, such compensation to be paid out of the general fund of the county upon the completion of said record or supplement. The tax collector shall also receive a commission of 5 per cent. on the amount of all delinquent taxes collected in addition to the commissions now allowed him by law."

That portion of the amendment of 1919 in respect to the collector's fees, is:

"The tax collector shall, in addition to the compensation and costs now allowed by law, be entitled for the making up the delinquent record or supplements thereto, where necessary under this Act, the sum of five [.05c] cents for each and every line of yearly delinquencies entered on said delinquent record or supplement, the same not to exceed twenty-five cents in any one case, such compensation to be paid out of the general fund of the county upon a completion or approval of said record or supplement. The tax collector shall also receive a commission of 5 per cent. on the amount of delinquent taxes collected in addition to the commissions now allowed by law, but all such fees or commissions of the said tax collector, district attorney or county attorney under this act shall be accounted for as fees of office under provisions of the Maximum Fee Bill, as provided in chapter 4, title 58, of the Revised Civil Statutes of Texas 1911, as amended by chapters 121 and 142, Acts of the Regular Session of the Thirty-Third Legislature." Section 2 (Vernon's Ann. Civ. St. Supp. 1922, art. 7688a).

[1] The portion of the title to the Act of 1919 that relates to fees of tax collectors must have been overlooked by appellant, as he only quotes from the first portion of the title to the act, whereas the latter portion of the caption not quoted is:

"An act to amend section 1 of chapter 147 of the acts of the regular session of the Thirty-Fourth Legislature relating to the duties of tax collectors to prepare and mail notices and statements of delinquent taxes against lands to the record owners thereof; the preparation and perfecting of the delinquent tax records of various counties and the *compensation of the collector therefor.*" (Italics ours.)

The caption of the act broadly points to a law that provides for the compensation of the collector. The tax laws we are discussing herein relate mostly to fees and "compensation of the collector." No one, it seems to us, can be misled so as to conclude that the amendment was silent on the prescribed duties of the tax collectors and the prescribed compensation.

It was not necessary, as contended, to separately name fees in the title of the act when, as here, it sufficiently mentions tax collectors' compensation, and is broad enough to require the tax collector to account for "fees of office under provisions of the maximum fee bill as provided in chapter 4, title 58, of the Revised Civil Statutes of Texas of 1911, as amended by chapters 121 and 142 of the Acts of the Regular Session of the Thirty-Third Legislature." In such cases the Constitution should be given the most liberal construction, especially as the ultimate object and subject is in respect to fees and costs of officers charged with the duties of tax collector. Giddings v. San Antonio, 47 Tex. 548, 26 Am. Rep. 321; I. & G. N. Ry. v. Smith County, 54 Tex. 1; City of Austin v. McCall, 95 Tex. 565, 68 S. W. 791; Doeppenschmidt v. I. & G. N. Ry., 100 Tex. 534, 101

S. W. 1080; Newnom v. Williamson, 46 Tex. Civ. App. 615, 103 S. W. 656; Joy v. City of Terrell (Tex. Civ. App.) 138 S. W. 215; Lowery, Tax Col., v. Red Cab Co. (Tex. Civ. App.) 262 S. W. 147.

[2] It has frequently been held by the courts of this state that none of the provisions of a statute should be regarded as unconstitutional where they relate, directly or indirectly, to the same subject, have a mutual connection and are not foreign to the subject expressed in the title. Austin v. Ry. Co., 45 Tex. 234; State v. Parker, 61 Tex. 265; Howth v. Greer, 40 Tex. Civ. App. 552, 90 S. W. 211; Singleton v. State, 53 Tex. Cr. R. 626, 111 S. W. 736.

In the case of Joy v. City of Terrell, supra, where it was contended that an act was void as in contravention of section 35, art. 3, of the Constitution, the court said:

"In determining what statutes follow the constitutional provision in question, the rule is that the courts will not pronounce a statute unconstitutional unless it is clearly shown, and both the statute and the constitutional provisions with which they are claimed to be in conflict will be liberally construed with the view of sustaining legislative action. Such a construction has been uniformly given by the courts of this and other states in the consideration of similar constitutional objections. Stone v. Brown, 54 Tex. 330. Therefore, even though some doubt should exist as to whether or not the statute under consideration embraces more than one subject, the validity of the same should be sustained upon the general principle that it should be held constitutional, unless clearly otherwise. Reasonable doubts, if any, should be resolved in favor of the statute."

In Texas & P. Ry. Co. v. Stoker, 102 Tex. 61, 113 S. W. 3, the title to the act passed on was as follows:

"An act providing for the appointment of official stenographers for district courts by the judges thereof, to report cases, and providing for the method of making up and filing statement of facts of all evidence introduced in the trial of causes, providing for the time within which such statement of facts must be filed, and providing for the appointment of special stenographers in county courts, for their compensation, and for making and filing of statements of fact in civil cases tried in the county courts."

The Supreme Court held that the act was constitutional, saying:

"The different provisions of the statute, as stated in the title, may all be considered properly as the regulation of one subject, which is the subject of the bill, viz., the preservation by the proper persons of the evidence taken in trials and of questions arising out of it, and the statement thereof in authentic form for the information of the appellate courts upon appeal. The provisions for the appointment and compensation of stenographers are incidental to and in aid of this general purpose and we see no good reason why all of the provisions could not properly be included in one bill."

A similar ruling was made in the case of Newnom v. Williamson, 46 Tex. Civ. App. 615, 103 S. W. 656, and in Howth v. Greer, 40 Tex. Civ. App. 552, 90 S. W. 211, it was held that an act creating corporation courts and regulating the county attorney's fees therein, was not unconstitutional as embracing more than one subject, the fixing of such fees being merely incidental to the main subject of the bill. It is clear that the amended act requiring tax collectors to report and to account for excess fees, as stated, under the provisions of the maximum fee bill, is constitutional and the assignment of error on that point is overruled.

By cross-assignments the appellee challenges the several rulings of the court in allowing the appellant to offset and recoup certain sums by alleged error in paying over certain fees under the mistaken belief that he was required to pay the sums over to the county, whereas, under a proper construction of the law, the fees belonged to him, and challenges the several rulings of the trial court in allowing appellant any credits whatever. As all these rulings involve the same construction of the law, they will be considered as though under a grouped proposition. It is very apparent from the findings of the court, that in no single instance did appellant present his claim for fees against the county for its approval.

[3] It has always been our understanding of the law that in matters of claims of the kind involved in this controversy, they must be directly presented to the commissioners' court for allowance or disapproval; which court has full and final jurisdiction over such matters, and its judgment is complete, final, and binding, as much so as any judgment of the Supreme Court. Following a long line of decisions, we so hold in Fox v. Cameron County, 257 S. W. 1112, and find no reason now to change our mind, though in that case, notwithstanding it was a county court case, in which the courts of civil appeals have final jurisdiction, the honorable Supreme Court has granted a writ of error. On this issue the trial court found as a fact:

"That the defendant, J. A. Bitter, has never filed, made, or presented to the county auditor or the commissioners' court of Bexar county for approval, allowance, or payment of any claim or demand for any of the items or amounts, or any part thereof, which he seeks to recover, recoup, and set off, against plaintiff's demand,"

—and then concluded, as follows:

"I find that the defendant is not entitled to recover any of the amounts claimed by him as set forth in his answer, except the amounts which he has been allowed to recoup for the fiscal years 1917–1918, 1918–1919, as above set forth, because he has never presented any claim for same, or any part of same, to the commissioners' court or county auditor of Bexar county for auditing and allowance, and said court

and auditor have never neglected or refused to audit and allow the same."

Such claims must first be presented to the commissioners' court for allowance or refusal, before any suit shall be instituted. Articles 1481 and 1366, R. S.

No claim against the county can be sued upon until those conditions shall have happened. Hohman v. County of Comal, 34 Tex. 37; Norwood v. Gonzales County, 79 Tex. 218, 14 S. W. 1057; Anderson v. Ashe, 99 Tex. 447, 90 S. W. 872; Presidio County v. Jeff Davis County, 13 Tex. Civ. App. 115, 35 S. W. 177; Bell County v. Flint (Tex. Civ. App.) 91 S. W. 329; Williams v. Bowie County, 58 Tex. Civ. App. 116, 123 S. W. 199; Stringer v. Franklin County, 58 Tex. Civ. App. 343, 123 S. W. 1168; Morgan v. Oliver, 60 Tex. Civ. App. 210, 129 S. W. 156; Bogue v. Van Zandt County (Tex. Civ. App.) 138 S. W. 1065; Boaz v. Ferrell (Tex. Civ. App.) 152 S. W. 200; Smith v. Wise County (Tex. Civ. App.) 187 S. W. 705; Cobb v. Dies (Tex. Civ. App.) 203 S. W. 437; McLennan County v. Miller (Tex. Civ. App.) 257 S. W. 680; Nueces County et al. v. Nueces County Drainage Dist. et al. (Tex. Civ. App.) 258 S. W. 208.

[4] To avail oneself of the defense of a set-off it must be upon a subsisting legal cause of action, such as upon which a suit can be instituted independently. 34 Cyc. 666; Holliman v. Rogers, 6 Tex. 91; Lakeside Sanitarium v. Dickens, 259 S. W. 1110. It must follow, because appellant's plea of recoupment and set-off stated no cause of action against the county of Bexar, and did not show that it had been filed with the commissioners' court for auditing or allowance, that the demurrer should have been sustained.

[5, 6] The trial court found in its twelfth finding of fact that the defendant made monthly reports to the county auditor and annual reports to the district court, purporting to show all fees collected, but that none of the fees sued for by plaintiff were ever reported by defendant; that the county attorney had advised him that the fees sued for herein were not fees of office to be accounted for under the maximum fee bill; and that there was no evidence that the district attorney had any notice or knowledge of the retention of such fees by defendant.

It was sought to show by parol evidence, and to charge the county of Bexar with notice, that appellant was collecting, appropriating, and retaining certain fees, because such facts were brought to the knowledge of a former county judge and the county auditor, who did not report the same. Suppose they did individually have such general information, it would still neither impute knowledge of all the facts the law required to be made in writing or under oath to the county, nor estop it from requiring the appellant to file a legal report thereof.

The only manner provided by law for giving notice to the proper authorities of the collection of fees, and the purpose for which they were collected, is for the officers collecting such fees to make sworn reports thereof. Upon such reports, settlements are made annually with the county and from such reports the amount due the county as excess fees is ascertained. It was found by the trial court that the appellant made annual reports purporting to cover all fees collected and received by him during the fiscal years in question. These reports were sworn to as being complete and correct, but none of the fees sued for were included in such reports. The failure to disclose in his reports, at some period of time before the expiration of his term of office, the essential facts, was a plain violation of the law; and whether intentional or otherwise he was withholding material information from the county, and it does not lie in appellant's mouth to say the county had oral notice or had approved his contention.

[7] The foregoing disposes of all material questions raised in this case, except as to limitation. Limitation begins to run, if at all, against the county from the date the collector's report should have been finally made out, because that is the first time it would be charged with notice of the adverse claim, if one had been filed. But if such report did not disclose the items retained, no limitation would run until the commissioners' court had or could have had notice. No duty is imposed upon the commissioners' court to investigate for facts beyond and outside of the sworn report. That is the only means of information that the law provides in such cases. The information relating to unreported fees lies undisclosed in the breast of the tax collector, whose bounden duty it is to make verified and correct account of and disclose all the fees that come to his hands as a tax gatherer. The contention that the statute of limitation is applicable to those payments appellant made to the county, for which appellant was allowed a credit, cannot be justified under the doctrine of set-off, because they were voluntary payments under a mistake of the law, and such claims as would be required to be presented for allowance or disallowance. Again, treating this cross-bill as an independent suit, based upon the refusal of the commissioners' court to allow the same, appellant would not be entitled to a judgment, since a period of more than four years had expired between the date of payments and the filing of his cross-bill. Nelson v. S. A. Trac. Co., 107 Tex. 180, 175 S. W. 434; Harris County v. Charlton, 111 Tex. 588, 243 S. W. 459; Harris County v. James Charlton, County Treasurer, et al., 112 Tex. 19, 243 S. W. 460.

[8, 9] In respect to appellee's suit to recover any sums of money that it sues for, which matured more than a period of four years before the filing of this suit, the statute of

limitations of four years applies and would bar it. On the limitation question the court's finding is as follows:

"I find that the statute of limitation of four years does apply, but that the statute did not begin to run until December 1st following each fiscal year, as the fiscal year for the county ended November 30th of each ,year, and the collector had until the end of each fiscal year to make his final settlement of monies collected by him to the county. I therefore find that the following sums sued for by the plaintiff herein were barred by the statute of limitation of four years before the filing of plaintiff's suit herein, and that plaintiff is not entitled to recover herein any of said sums, viz.: For the fiscal year 1914–1915, $2,840; for the fiscal year 1915–1916, $2,971.73; for the fiscal year 1916–1917, $4,377.71, or a total of $10,189.44."

Plaintiff's original petition was filed on February 22, 1922. Defendant was elected to the term of office which included the fiscal year 1916–1917, on November 7, 1916, for a term of two years; which did not expire until December 5, 1918, the date he qualified for his next term of office.

In support of appellee's contention that limitation did not run against it the following authorities are cited: Brown v. Sneed, 77 Tex. 471, 14 S. W. 248; Delta County v. Blackburn, 100 Tex. 51, 93 S. W. 419; Johnson v. Llano County, 15 Tex. Civ. App. 421, 39 S. W. 995; Coleman v. Thurmond, 56 Tex. 514; Bannock County v. Bell, 8 Idaho, 1, 65 P. 710, 101 Am. St. Rep. 140; Bexar County v. Linden, 110 Tex. 339, 220 S. W. 761. Much stress is laid upon the opinion of the former Chief Justice Phillips as holding that the statute of limitation would not run against a county because they are instrumentalities of the state; ergo, because limitation runs not against the sovereign it will not run against a county. A close reading of the opinion in that case makes it manifest that there is no such holding.

But our Supreme Court, in Harris County v. Charlton, 112 Tex. 19, 243 S. W. 460, a later case, does not leave the question in any doubt. In that case our Supreme Court, as now constituted, said:

" 'It is extremely difficult to ascertain and determine just at what period of time any one of the several transactions making up the total involved in the ,several funds, may have occurred.' The bondsmen of the different bonds had the right and opportunity to have the liabilities between them settled in this action. Skipwith et al. v. E. S. Hurt, County Judge et al., 94 Texas, 322, 60 S. W. 423. As to the issue of limitation, all items sued for which were barred by the four years statute of limitation were excluded from the judgment of the trial court. Limitation, however, would not run in favor of defendant in error Charlton and his bondsmen against the county of Harris *as trustee of the public free school fund.* Delta County v. Blackburn, 100 Texas, 51–60, 93 S. W. 419, and cases therein cited." (Italics ours.)

[10] It is very difficult in this case to determine just at what period of time the statute began to run. We think that the statute of limitation began to run on each item as per the date the court stated the balances were due, and from which several dates the legal interest was to run. No doubt, the statute of limitation began to run from the expiration of the tax collector's term of office because up to that time he could have filed a report and secured the action of the court thereon. We agree with the trial judge that the appellee is not entitled to recover any of the sums sued for covering the fiscal years 1914, $2,840; 1915–1916, $2,971.73; and 1916–1917, $4,377.71—a total of $10,189.44.

[11] We do not agree with the court that the sum of $3,727.41, collected by appellant as 5 per cent. commission on delinquent taxes for the fiscal year 1917, ending November 30, 1918, and paid by appellant to appellee as excess fees covering said period of time, be allowed as a recoupment, for two reasons, at least. The first is, it was a voluntary payment made, though apparently through mistake, and was such a claim against the county as to require an adjustment on the ground of mistake, and could not be sued upon otherwise and not the subject of offset. It was a mistake of law, not of fact. The second reason is, conceding it could be made the basis of an independent suit, still, then, it was barred by the statute of limitation of two years, and for that reason no recovery could be had thereon.

There can be no recoupment in a cross-action to recover any sum paid to the county by mistake of the law or otherwise, because that comes peculiarly within the general power and jurisdiction of the commissioners' court for adjustment. So, before any suit can be maintained against the county by cross-action, or otherwise, it must first be presented to the county commissioners' court.

We hold that the statute of limitation of four years runs against the county on such claims in favor of the officers, and of two years against the officers in favor of the county. It is apparent from what we have said, that the court erred in making any allowance to appellant on his cross-action for the sum of money shown to have been erroneously and voluntarily paid to the county under the mistaken view of the law. That is a moral question that only can be settled by the commissioners' court, whose action would be final.

The trial court found that for the fiscal year beginning December 1, 1917, and ending November 30, 1918, appellant was indebted to appellee in the sum of $4,212.85, with 6 per cent. interest from December 1, 1918, but offset this item with an allowance of $3,727.41, in favor of appellant on his cross-action for fees properly belonging to

him, but erroneously paid by him to the county. This adjustment left a balance due the county for that period of $485.41, for which amount, with interest, judgment was rendered in favor of the county for said period. The conclusions we have reached and set forth herein, however, require us to hold that appellant was not entitled to that offset, and that the county should recover of appellant the whole amount for the period mentioned, $4,212.85, with interest as stated.

As thus ascertained, the judgment of the court below should have been against appellant on his cross-action, and in favor of appellee for the sum of $23,437.91, with interest as found by the court below on $19,-710.50, and interest on the additional sum of $3,727.41, at the rate of 6 per cent. from December 1, 1918, together with all costs.

The judgment of the trial court is reversed as to appellant, and judgment here rendered as indicated.

### On Motion for Rehearing.

There is nothing new set up in the motion filed for rehearing, either by appellant or by appellee. Replying to appellant's motion, we feel constrained by what we regard the settled law of this state, to adhere to our holding, that, as a condition precedent to the right to sue the county on any kind of a claim or allow a set-off by cross-bill, the claim must have been first presented to the commissioners' court for its action. Clearly the commissioners' court is under as high an obligation and duty to do right and act honestly as any individual.

[12] The facts seem to be conceded that appellant paid the excess fees to the county, when, as a matter of law, it was not entitled to them, though it has retained them. The trial court cannot enlarge its powers to administer equity, without proper pleading, if it could do so at all, when the commissioners' court had full and the sole power, on a proper request and showing, to grant the relief, if appellant be entitled to the credit.

There was no plea presented for equitable relief, in the trial court, such as would compel the appellee to allow the credits, as a condition, before it could recover the proper amount that appellee would then be entitled to recover. State v. Morgan, 52 Ark. 150, 12 S. W. 243; Commonwealth v. Owensboro Ry. Co., 81 Ky. 572; Halsey v. Jones, 86 Tex. 488, 25 S. W. 696; Donaldson v. Meyer (Tex. Com. App.) 261 S. W. 369.

It is said in State v. Morgan, supra:

"The court can render no judgment against the state, but it may impose equitable terms in administering relief, and make a full compliance with them a condition precedent to its enjoyment. If the plaintiff shall amend its complaint, and supply the omission we have indicated, the court will hear the cause, have an account stated of the amount which plaintiff should pay the defendant, crediting him, as in other similar suits, by the purchase money, amount paid for taxes, and the value of improvements on the land, and charging him with the rents and profits, and upon the payment of said sum render a decree canceling the patent. If such amendment is not made, the cause will be dismissed. As the plaintiff may not be able to comply with equitable terms until the Legislature meets, and provides, if it so desires, the fund necessary, it would perhaps be well for the court to continue the cause until that time."

In the Morgan Case, supra, the state was seeking to recover land it had illegally sold after having received the purchase price.

[13] It will thus be seen that the state can be estopped, at least, the parties can be left in statu quo, for, as said in the case of Commonwealth v. Owensboro & Nashville Railway Company, 81 Ky. 572, the court, speaking through Judge Pryor:

"Where the commonwealth undertakes to litigate with a citizen or corporation, the latter may, by set-off or counterclaim, defeat the recovery of the state; but in the absence of some special legislative authority, the defendant cannot have judgment over against the commonwealth."

In the case of Halsey v. Jones, supra, suit was instituted to recover land under an alleged void purchase by the administrator, in which the defendant sought to compel, as a condition precedent, the return of the purchase price paid by him to the estate, and the court said:

"In this case the order of the court recognized the claims of the administrator as subsisting debts against the estate; and they were charges upon the property in the hands of the administrator. The defendants are therefore entitled to be reimbursed for the amount which was credited upon the claims in the transaction, before the plaintiffs can recover the land. They are also entitled to interest. Mayes v. Blanton, 67 Tex. 245.

"The judgment will therefore be reformed so as to allow the plaintiffs in the court below to recover the land, conditioned, however, upon their paying to the defendants within six months from this date the sum of $80, with interest thereon from the 4th of April, 1840. The plaintiffs in error will recover the costs of the appeal and of the writ of error."

And in Donaldson v. Meyer, supra, a more recent case, and we rather think the rule there was extended to the very breaking point, being a suit to set aside a void conveyance of a homestead made by an insane man, who had no power whatever to contract and sell his homestead, the Commission of Appeals held:

"'We recommend that the judgment of the district court and that of the Court of Civil Appeals be reversed, and that judgment be

here rendered as given by said courts, save that if plaintiffs below, that is, Meyer and wife, fail within six months to deposit with the clerk of the district court, for benefit of defendant Donaldson, the sum of $3,000, with interest from November 4, 1918 at 6 per cent., then order of sale shall issue for the sale of the land in controversy in this suit to satisfy said judgment in favor of defendant Donaldson, and costs of sale."

This holding was approved by the Supreme Court.

Appellant never, by plea or otherwise, sought the equitable powers of the trial court, but stood upon his legal defense to set off his claim. The reply of appellant to motion of appellee for a rehearing that the statute of limitation does not run against the county is well presented, wherein appellant says:

"The only case in Texas cited by appellee is that of Coleman v. Thurmond, 56 Tex. 514, which we submit is not applicable in the present case. In the above cited case, the suit was to recover land held by the county in trust for the state and it was representing the state as its alter ego and as its agent for the recovery of property the true title to which was in the state. In the present case the state has no interest in excess fees paid; those fees are paid directly to the county for its use and benefit and are not payable by it to the state and the state has no control over the expenditure of same by the county. The Legislature has not seen fit to exempt the county from the running of the statutes of limitation on any demands it may have for any moneys due it."

Appellee, by separate motion, calls our attention to an error committed in the statement of certain amounts allowed appellant by way of recoupments, credits, or set-offs amounting to $3,727.41, during the fiscal year beginning December 1, 1917, and ending November 30, 1918; whereas, the trial court also allowed the appellant, by way of set-off as against the amount recovered by the county of Bexar for fees for the fiscal year beginning December 1, 1918, and ending November 30, 1919, the further sum of $4,523.78, which respective amounts of $3,727.41 and $4,523.78, being same in status should not have been allowed appellant as set-offs. The total of said two amounts aggregate $8,251.19. It is therefore ordered that the judgment be so corrected by adding to the appellee's recovery the further sum of $4,523.78, with interest thereon at the rate of 6 per cent. from December 1, 1919.

Appellant's motion for a rehearing is overruled, and likewise appellee's motion for a rehearing is overruled. Appellant's motion to correct the judgment is granted, and the correction is made as above stated, by adding such additional sum of $4,520.78, with interest, to the judgment.