Opinion delivered March 6, 1888.

No. 2479.

SCREWMEN'S BENEVOLENT ASSOCIATION *v.* E. A. SMITH ET AL.

1. CONSOLIDATION OF ACTIONS.—When suits are brought by the same plaintiffs against the same principal defendant on separate obligations to secure the faithful performance of official duties by the the principal defendant, and there are different sureties on the several bonds which were given for different terms of official service, and who are defendants in the suits brought on their respective bonds, the suits can not be consolidated though the plaintiff may be unable to state under which term of official service a misappropriation of funds by the principal defendant occurred.

2. PRINCIPAL AND SURETY.—The fact that security is required for the performance of an obligation is a sufficient notice to the surety that the obligee is unwilling to trust solely to the skill, diligence or honesty of the principal obligor, hence in order that the surety may avoid the bond, he must not only show that he was not informed of facts known to the obligee, affecting the fitness of the principal obligor for the duty to be performed, but that there was a fraudulent concealment or withholding of facts material for the surety to know. Whether the failure of the obligee to disclose facts known to him should be deemed fraudulent, depends much upon the character of the facts concealed, if the facts show unfitness to perform the duty required or guilt on the part of the principal obligor of gross moral delinquency, it would seem that these facts should be revealed to the surety, whether asked for or not.

8. SAME.—When security is required for the discharge of a trust requiring strict integrity, and the obligee knows that the person from whom he requires bond with security for its performance is dishonest, it is his duty to inform the surety.

4. SAME.—The fact that the treasurer of the association from whom bond with security is required, may, as such treasurer, during a former term, have mingled the funds of the association with his own, and thus used the identical trust fund for individual purposes, and in this way may have been guilty of a technical conversion, and this with the knowledge of the association, who failed through its proper officers to inform the sureties of the fact, will not relieve such sureties from liability on the treasurer's bond for a subsequent defalcation.

5. EVIDENCE.—In a suit against a defaulting treasurer, when it is material to ascertain who among his sureties on different bonds, covering different periods of time, are liable, every fact showing the dealings of the treasurer with the trust fund is admissible in evidence.

6. DECLARATIONS.—Ordinarily declarations of a principal in an official bond, when not made in the course of his official duty, are not admissible in evidence in a suit against the surety.

APPEAL from Galveston. Tried below before the Hon. W. H. Stewart.

*George P. Finlay* and *Forster Rose,* for appellants: That the suits should have been consolidated, they cited Revised Statutes, article 1450; Love v. Keowne, 58 Texas, 191; Young v. Gray, 65 Texas, 99; Lott v. Mobile, 23 Central Law Journal, No. 13, page 308.

The intermingling of plaintiff's money with Smith's private funds in bank, and the drawing out of the same in his private name and capacity did not constitute a misapplication of plaintiffs' funds. The treasurer was not a bailee, but a debtor.

It was no part of the duty of plaintiffs to communicate to the sureties any information as to the mode and manner of Smith's custody of their funds. (Murfree on Official Bonds, secs. 764, 748; McGee v. Insurance Co., 92 U. S. (Law ed.), 699; 2 Otto, 93; Perley v. Muskegon, 20 American Reports, 637 (32 Mich., 132); Bennett v. Association, 57 Texas, 72; Murfree on Official Bonds, secs. 464, 635, 636; Shelton v. State, 21 Am. Reps., 197.)

The proposition of law contained in defendant's special answer is denied. Rules defining and requiring duties of treasurers or other officers or committees are for the benefit and protection of the association, and not of the sureties. (Bennett v. Association, 57 Texas, 72; McGee v. Manhattan Ins. Co.,

92 U. S. (Law ed.), 699; 2 Otto, 93; Murfree on App. Bonds, secs. 764, 748, 752, 753; Association v. Price, 26 Am. Reps., 703, 16 Fla., 204.)

On the improper admission of evidence, they cited Murfree on Appeal Bonds, section 602; Greenleaf on Evidence, 123, 124, 187; Brandt on Sureties, 518, 521; Perley v. Muskegon, 20 American Reports, 637 (32 Mich., 132); Barry v. Screwmen, etc., 67 Texas, 255; Shelton v. State, 21 American Reports, 197.

*James G. Stubbs* and *Robert G. Street*, for appellees: That the suits should not have been consolidated, cited Revised Statutes, article 1450; Harle v. Langdon's Heirs, 60 Texas, 555; Young v. Grey, 65 Texas, 99; Posey's Civil Digest, 136.

It was clearly plaintiffs duty, under its by laws, to have ascertained whether or not Smith had on hand or in safe keeping its funds or property at the end of his first term, which action would have probably made known his deficit and resulted in steps to recover the same at once, and no new bond would have been exacted, and thus these defendants would have never been sought to be made liable.

As to negligence of plaintiff releasing sureties, they cited Graves v. Lebanon Bank, 10 Bush, 23; People v. Jansen, 7 John (N. Y.), 332.

In Bennett v. Association, 57 Texas, 72, cited by appellant, the defaults for which the sureties were held liable occurred after the bond was given.

Abstract error not cause for reversal, citing Ponce v. McWhorter, 50 Texas, 562; Guerin v. Patterson, 55 Texas, 124; Douglass v. Mundine, 57 Texas, 344; Woods v. Durrett, 28 Texas, 429; Ellis v. Mills, Id., 584.

That there was no error in admitting evidence, they cited Commercial Bank v. Jones, 18 Texas, 811; Murfree on Official Bonds, section 453; State v. Roberts, 21 Arkansas, 260; Draper v. Joiner, 9 Humphreys, 614; Wren v. Kirton, 11 Vesey, 380; Bissell v. Saxton, 77 New York, 191; same case, 66 New York, 61; School District, etc., v. McDonald, 39 Iowa, 564; Barry v. Screwmen's Association, 67 Texas, 255, and cases cited; Keowne v. Love, 65 Texas, 158; Harriman v. Brown, 8 Leigh, 713; Mahaska v. Ingalls, 16 Iowa, 81; Coleman v. Frazier, 4 Richards, 147; Best on Evidence, 480, note C, and cases cited.

STAYTON, CHIEF JUSTICE.   E. A. Smith was the treasurer of the appellant association for one term, from December 28, 1883, to January, 1885, and he executed a bond with sureties conditioned for the faithful performance of his duties during that term.   He was elected for a second term, and executed a bond with sureties, there being only one person who was surety on both bonds.   He was removed from office July 24, 1885, and two suits were brought against him and his sureties, to recover moneys which came into his hands and were never paid over.

This action is on the bond executed for the last term, and the petition alleges that he converted the moneys sued for after the last bond was executed.   The other action was brought on the bond first executed, and the petition in that case, which was offered in evidence by the defendants, alleges that the treasurer misappropriated a larger sum of money than is sued for in this case, and that this misappropriation occurred prior to the time the bond sued on in this case was executed.   A motion was made by the plaintiff to consolidate the two actions, but it gave no reasons why this should be done, and it was overruled.

The statute provides that "whenever several suits may be pending in the same court, by the same plaintiff against the same defendant, for causes of action which may be joined, or where several suits are pending in the same court by the same plaintiff against several defendants, which may be joined, the court in which the same are pending may, in its discretion, order such suits to be consolidated." (Rev. Stats., art. 1450.)

To authorize a consolidation in any case, under the statute, the causes of action must be such as, under the general rules applicable to the subject, may be joined.   Neither the petition nor motion in this case show that the causes of action asserted in the two causes were such as might be properly joined, and, if the court was not vested with a discretion in such cases, it could not be held that it erred in overruling the motion to consolidate.

If, however, we look to the petition in the other case, it is apparent that a cause of action was therein stated which could not legally have been joined with the cause of action asserted in this.   It would seem, when actions have to be brought against two sets of sureties on official or like bonds, given by a principal and different sureties, to secure the faithful performance of duty by the principal, for different terms, the one suc-

ceeding the other, that one action against the principal and all the sureties ought to be permitted when the plaintiff is unable to state and prove clearly where a misappropriation of funds occurred, and it may be that legislation upon this subject ought to be had. However this may be, we are not authorized to depart from well settled rules of law to meet what may seem to be hard cases. Whether the appellant could truly allege a state of facts which would entitle it to have the two actions consolidated, we need not inquire.

It is alleged in the answer of the defendants that "the said Smith was the custodian of plaintiff's moneys, as its treasurer, long before they signed the said bond, and that about the amount sued for was entrusted to him more than a year before these defendants executed the bond sued on, and was by him indiscriminately mingled with other moneys in bank, and lodged therein and drawn against in his (Smith's) individual name and capacity, and used and employed by him for other uses than those of said association, and that such method of dealing with said funds and the intention of the said Smith so to deal with the same was known to plaintiff and its officers, but was unknown to these defendants, and they say that it was the duty of the plaintiff, at and before the making and delivery of the bond sued on, to communicate said facts to them, but that the plaintiff wholly failed to do so; wherefore they say that they never became bound by the obligation sued on." In a subsequent paragraph in the answer it is alleged, in effect, that the plaintiff negligently failed to ascertain that its treasurer was misappropriating its funds before the bond sued on was executed, that this could have been ascertained, and that the failure to do so and to inform the defendants of that fact before they became sureties, releases them from obligation on the bond. Demurrers to these parts of the answer were overruled.

That the demurrer to the last paragraph of the answer referred to should have been sustained, is settled by the case of Bennett v. Association, 57 Texas, 73.

There is some conflict of authority as to the extent of the obligation of one who takes security for the faithful discharge of duty by one who enters his employment to inform the surety of any facts within his knowledge illustrative of the unfitness of the employee, resulting from habits or delinquencies, and as to the effect of the failure to give such information. The fact that security is required, of itself would seem to be a

sufficient notification to one proposing to become surety, that the obligee is not willing to trust solely to the skill, diligence or honesty of the person of whom security is required; and it seems to us that to avoid a bond on the ground that the surety was not informed of facts known to the obligee, it should be shown that there was a fraudulent concealment or withholding of facts material for the surety to know.

Whether a failure by an obligee to disclose facts known to him may be deemed fraudulent, will depend largely upon the character of the fact concealed; and, cases may arise in which it would be the duty of an obligee to disclose to a surety facts known to him, notwithstanding the surety may make no inquiry. If, in the course of the employment of the obligee, the person of whom security is asked has been guilty of acts showing moral delinquency and utter unfitness for trust, some of the cases held, and it seems to us properly, that in such case information should be given to the surety whether asked for or not. If, however, the facts not disclosed be not of this character, but such as consist with honesty, and may only tend to show that the person is negligent, dilatory, or unskillful, it may not be the duty of the person taking bond unasked to give information to the surety of such known facts. Such facts are ordinarily easily ascertained, for there is not that effort to conceal them which ordinarily exists when the unfitness results from a moral delinquency which all men, not entirely destitute of shame, endeavor to conceal.

The person of whom security is required would ordinarily, if asked, give information in the one case, while in the other he would most studiously conceal it, and his employer, demanding security, and himself might be the only persons to whom his real character was known. The presumption is, that a man is honest, and upon this, in the absence of something to put him on inquiry, sureties will ordinarily rely. The reputation of the person may be fair, but if his employer, who demands of him security, before confiding to him a trust, the faithful discharge of which requires strict integrity, knows that he is dishonest, he ought to disclose that fact to the surety before he takes his obligation.

These rules we understand to be sanctioned by well considered cases. (Bank v. Brownell, 9 Rhode Island, 169; Ins. Co. v. Holman, 55 Iowa, 571; Railroad Co. v. Gow, 59 Georgia, 694;

Bostwick v. Voorhis, 91 New York, 357; Roper v. Trustees, 91 Illinois, 519; Ins. Co. v. Mabbett, 18 Wisconsin, 698.)

The treasurer may have indiscriminately mingled the funds of the association with his own, and may have used the identical money which he received from his principal for purposes of his own, and thus have been guilty of a technical conversion, and of this the appellant may have had knowledge and failed to communicate it to the sureties; but this was not sufficient to relieve them from the obligation imposed by their bond. We think the demurrer to the plea quoted should have been sustained. It is likely, however, that no injury resulted to appellant by the rulings, for no evidence seems to have been introduced sufficient to sustain the pleas.

It appears that the treasurer kept a general deposit account with the bank of Adoue & Lobit, which commenced on January 12, 1884, and continued until April 6, 1885, against which during that time, he checked. It was shown that he kept no account with any other bank, and there was some evidence tending to show that he mingled the funds which he received as treasurer with other moneys, and against his general deposit, thus made, checked for sums to meet the current expenses of the business in which he was engaged. The deposit account began on January 12, 1884, by the deposit of four thousand nine hundred and sixty dollars and fifty-nine cents, which was of the funds of appellant, and the only other deposit made during that month was four hundred and forty-six dollars and forty cents, of which he may have received as treasurer two hundred and eleven dollars and seventy-five cents. During the month on which the deposit account began, he paid out for the appellant only four hundred and ninety-four dollars and ninety-five cents, but he commenced checking against the deposit on the very day it began, then checking out one thousand three hundred dollars at one time, and during that month the further sum of two thousand one hundred dollars.

This illustrates the general character of dealing with the trust fund, and the bank account which was introduced to show when the money of the association was misappropriated, was objected to, as was the evidence offered to show that he kept no account with any other bank.

While it is true that the simple fact that the treasurer drew the trust fund from the bank where, without being required to do so, he had deposited it, might not be sufficient of itself to

show when he misappropriated it, still it was a fact which the jury might consider, in connection with other facts, to show that he converted the money to his own use, and the time when this was done.

He deemed it necessary or proper to deposit the funds in a bank, and so far as the evidence shows thought this necessary so long as he remained treasurer, or had money to deposit. He selected the bank in which he would deposit, and it was proper to show that he never selected and used another. Under the evidence the jury might well inquire, why withdraw funds from the selected deposit, when it was not needed to pay checks drawn on him by the association? We think it was proper for the jury to have before them and to consider the treasurer's dealings with the trust fund, in order to ascertain when the misappropriation was made. One witness, over objection, stated that the treasurer applied to him in November, 1884, for a loan of money. This evidence seems to us too remote to be admissible to prove when the money was misappropriated, and this was the contested issue in the case. Another witness was permitted to prove that in November, 1883, the principal on the bond sued on obtained his indorsement on a note for eight hundred dollars, executed by Smith and a person with whom he was associated in business, which was by them paid in the same month. This evidence was also admitted for the purpose of showing when the fund was misapplied. These matters all transpired before Smith was treasurer, and were not relevant.

On June 30, 1885, in pursuance of his official duty, Smith made a report to the association in which he stated that he then had in hand four thousand eight hundred and fourteen dollars and fifty-two cents, a sum in excess of that sued for, and to contradict this report the appellees were permitted to prove by a witness that he, in May, 1885, endorsed for Smith a note for two hundred dollars, which he subsequently had to pay. This testimony, we think, should have been excluded.

For the purpose of contradicting the same report one of the sureties was permitted to state that Smith applied to him in the month of July, 1885, to borrow money to pay benefits in the association of which he was treasurer. While declarations made by a principal in the course of his official duty are admissible against a surety, admissions and declarations not so

made are not ordinarily admissible against him. The evidence last referred to was of the latter class and should have been excluded.

As before said, there was no question as to the liability of the principal, the only question was as to the time when the misappropriation occurred, for on this depends the liability of the different sets of sureties.

The verdict might have been the same had the evidence admitted over objection been excluded, but this we can not know or undertake to decide as the case is presented.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*