UNITED STATES FIDELITY & GUARANTY CO. V. MEANS & FULTON IRON
WORKS ET AL.

Decided November 19, 1910.

**1.—Principal and Surety—Indemnity Bond—Concealment of Facts by Obligee.**

Cases may arise in which it would be the duty of the obligee in a bond voluntarily to disclose to one about to become surety thereon facts concerning the principal therein which affect the risk, such as facts showing a moral delinquency and utter unfitness for trust; the rule, however, does not apply to facts which only tend to show that the principal is negligent, dilatory or unskilful.

**2.—Same.**

To a suit upon the bond of subcontractor the surety plead that it was discharged from liability by reason of the fraud of the obligee in failing to disclose material facts which tended to enhance the risk and which were known to the obligee but unknown to the surety; evidence considered and held insufficient to establish said defense.

**3.—Same—Notice of Default.**

A surety who, long after the time named for completion of the work, signs a bond for the faithful performance of the contract, is charged with notice that an extension of time had theretofore been granted the obligor, and can not complain of the same.

**4.—Pleading—Amendment—Limitation.**

An amended petition correcting dates erroneously stated in the original petition, does not constitute a new cause of action.

Error from the District Court of Dallas County. Tried below before
Hon. E. B. Muse.

*Etheridge & McCormick* and *A. J. Clopton*, for plaintiff in error.—
The court erred in instructing a verdict against the Guaranty Company.
1 Storey, Equity Jurisprudence, secs. 215 and 324; Screwmen, etc., v.
Smith, 70 Texas, 172; Railton v. Mathews, 10 Cl. & Fin., 934; Warren
v. Branch, 15 West Va., 36; Comstock v. Gage, 91 Ill., 336; First National Bank v. Terry, 135 Fed., 622; Capital Fire Insurance Co. v.
Watson, 77 Am. St. Rep. (Minn.), 659; Smith v. Josselyn, 40 Ohio St.,
410; Franklin v. Cooper, 36 Maine, 197; Bank of Monroe v. Anderson
Bros., 22 N. W. (Iowa), 934.

Plaintiff in error is entitled to stand *strictissimi juris* upon its bond,
and the four extensions of time given by the defendant in error to the
Means & Fulton Iron Works, being in nowise provided for in the contract of May 22, 1903, each of such extensions constituted such a material change and novation of the original contract as to relieve plaintiff
in error of any liability whatsoever. Lonergan & Co. v. San Antonio
Loan & T. Co., 104 S. W., 1067; Luling Oil & Mfg. Co. v. Gohmert,
110 S. W., 774; McClary v. Trezevant & Cochran, 112 S. W., 955;
Randall v. Smith, 2 Posey's Unreported Cases, 398; Lane, Saylor &
Robinson v. Scott & Culver, 57 Texas, 372; McMullen v. U. S., 167
Fed., 464; U. S. v. Case, 25 Fed. Cases, No. 14743, p. 316; U. S. v.

Corwine, 25 Fed. Cases, No. 14871, p. 672; Home Savings Bank v. Traube, 6 Mo. App., 222.

*Chilton & Chilton* and *Wm. H. Clark,* for defendant, Gainesville Plumbing Company.—In order to avoid a bond on the ground that the surety was not informed of facts known to the obligee, it must be shown that the obligee procured the bond by fraudulent misrepresentations, or fraudulent concealment of the facts constituting the fraud.   Screwmen Association v. Smith, 70 Texas, 168; Page v. White S. M. Co. (Texas), 34 S. W., 988; Magee v. Insurance Co., 92 U. S., 93, 99, 100; Smith v. Bank, 53 S. W., 648; Bennett v. Association, 57 Texas, 72; American National Bank v. Cruger, 91 Texas, 452; Saint v. W. & W. Mfg. Co., 95 Ala., 362, 10 S., 539; Stuart v. Altman (Texas), 28 S. W., 461; Campbell v. Sherman, 151 Pa., 70, 25 Atl., 35; Magill v. Brown (Texas), 50 S. W., 143; Brandt on Suretyship and Guaranty, secs. 1 and 100; Burge Surg., secs. 1 and 157.

RAINEY, CHIEF JUSTICE.—In 1903, the Gainesville Plumbing Company, a partnership composed of M. P. Kelly and W. H. Riley, had a contract with the State of Texas to build and construct the electrical plant, light and heating apparatus and water tank for the Epileptic Asylum at Abilene, Texas.   On May 2, 1903, said plumbing company entered into a sub-contract with the Means & Fulton Iron Works of Birmingham, Alabama, whereby said Iron Works agreed to construct the necessary tank and tower for the waterworks, which was to be completed on or about September 30, 1903.   At this time the work not having been completed, time for its completion was extended for sixty days.   Time for completion was again extended until January, 1904, but the work was not finally completed until in March, 1904, when, in attempting to fill said tank with water, seventeen feet of water having been placed therein, said tower and tank collapsed and fell, wrecking both tower and tank.   On or about January 1, 1904, said work not being completed, the Plumbing Company being dissatisfied with the delay, said company demanded of the Iron Works security for the faithful performance of the work, and on January 13, 1904, the Iron Works executed to the Plumbing Company a bond, with the United States Fidelity & Guaranty Company as surety, in the sum of $2000, that the work should be constructed according to the terms of the contract entered into May 2, 1903.

This action was brought by the defendant in error against the Iron Works to recover $7000 for the collapse of the tower, and against the Guaranty Company for $2000, the amount of its bond.   The Iron Works becoming insolvent, the action was dismissed as to it.

The Guaranty Company answered by general and special demurrers, general denial and, specially, a novation of the contract.

A verdict was instructed for the Plumbing Company against the Guaranty Company, which prosecutes this writ of error.

The plaintiff in error assigns error to the instruction of the court directing a verdict, and the following proposition is presented: "The court affirmatively misdirected the jury as to the law arising on the undisputed. facts, in that the Gainesville Plumbing Company, in permitting the plaintiff in error to become surety upon the bond of the Means & Fulton Iron Works for the faithful performance of its contract, was bound to exercise the utmost good faith; and the concealment by it or its failure to disclose material facts which tended to enhance the risk incurred by the plaintiff in error in becoming a surety upon the bond, and which had occurred and were known to defendant in error prior to the execution of the bond, was a fraud upon the plaintiff in error, and operated to absolutely discharge it from liability."

The only testimony in the record is that of M. P. Kelly, one of the members of the Plumbing Company, and his evidence is in effect, "that he had a contract with the State of Texas; that he sublet to the Iron Works the construction of the water tank. That the Iron Works sent out some workmen and material; they worked with the material about three months; they put up some sections of the tank but they did not fit. They then took them down and made them fit on the ground and then put them up again. At that time I found out that the foreman sent out from Birmingham to superintend the job was incompetent, and so informed the Iron Works. The Iron Works then sent another man, one Ritchie, who worked about two months trying to build the tank and he wholly failed. I got tired of the other man as he drank too much. The time had expired, the State was crowding me for possession of the building, and I asked the Iron Works to relieve me of Ritchie. Up to that time I had not asked the Iron Works for a bond to protect me, but told them of the incompetent men they had sent out, and the style of structure they were trying to put together was not satisfactory, that their time had expired and I would not let them go any further without bond, which they executed. In my experience of twenty years as a contractor this is the only bond I ever required. I was to build the foundation for the water tower, which I did. The Iron Works did not erect the tower on this foundation. They removed the cap stones so as to fit some bolts and put them back again. They put in foot plates thirty inches, when the foot plates called for by the specifications were thirty-six inches, or three feet square. They built the foundation back without joining the cap stones with cement or concrete. This was done at the start, and I discovered it in October, 1903. It was done without my knowledge or consent; 'they assured me they would make them all secure and steadfast, but when the collapse came we found they replaced them loose without concrete or cement joining, and thereafter permitted them to remain in that condition. You could not see them anyway, after they took them up and put them back loose, because the ground was filled up all around them, and those caps just showed up on top of the ground and there was no possible chance to see without you had gone there and dug the dirt away so you could get in under them.'

I never notified the Guaranty Company of any of the facts above stated, either before or after the bond was executed."

The bond in suit, after providing for liability in case of breach thereof, contained the further provision as follows:

"First. That no liability shall attach to the surety hereunder unless in the event of any default on the part of the principal in the performance of any of the terms, covenants or conditions of the said contract, the obligee shall promptly upon knowledge thereof, and in any event not later than thirty days after the occurrence of such default, deliver to the surety at its office in the city of Baltimore written notice thereof, with a statement of the principal facts showing such default, and the dates thereof; nor unless the said obligee shall deliver written notice to the surety at its office aforesaid before making to the principal the final payment provided for under the contract herein referred to.

"Second. That in case of such default on the part of the principal, the surety shall have the right if it so desire to assume and complete, or procure the completion of said contract; and in case of such default the surety shall be subrogated and entitled to all the rights and properties of the principal arising out of the said contract and otherwise, including all securities and indemnities theretofore received by the obligee, and all deferred payments, retained percentages, and credits due to the principal at the time of such default or to become due thereafter by the terms and dates of the contract."

The question arises, is the evidence of such nature as to show that defendant in error acted in good faith, and that no fraud was perpetrated in failing to notify the Guaranty Company of the act of the Iron Works in relation to the construction of the water tank and tower? We think the evidence fails to show any fraud on the part of the Plumbing Company in failing to disclose material facts that prevents a recovery against the Guaranty Company.

Chief Justice Stayton, in Screwmen Assn. v. Smith, 70 Texas, 168, thus announces the rule: "The fact that security is required, of itself would seem to be a sufficient notification to one proposing to become surety, that the obligee is not willing to trust solely to the skill, diligence or honesty of the person of whom security is required; and it seems to us that, to avoid a bond on the ground that the surety was not informed of facts known to the obligee, it should be shown that there was a fraudulent concealment or withholding of facts material for the surety to know. Whether a failure by an obligee to disclose facts known to him may be deemed fraudulent, will depend largely upon the character of the fact concealed; and cases may arise in which it would be the duty of an obligee to disclose to a surety facts known to him, notwithstanding the surety may make no inquiry. If in the course of the employment of the obligee, the person of whom security is asked has been guilty of acts showing moral delinquency and utter unfitness for trust, some of the cases hold, and it seems to us properly, that in such cases information should be given to the surety whether asked for

or not (otherwise a fraud). If, however, the facts not disclosed be not of this character, but such as consist with honesty, and may only tend to show that the person is negligent, dilatory or unskillful, it may not be the duty of the person taking the bond unasked to give information to the surety of such known facts."

There is no evidence tending to show that defendant in error knew who the Iron Works intended to give as security until the bond of the Guaranty Company was received by it. No misrepresentations were made by it or the Iron Works, so far as the evidence shows. The bond was executed some four months after the expiration of the time for the completion of the contract the performance of which it guaranteed, which was sufficient to put it on notice that up to that time for some reason the contract had not been complied with, and if any information was desired it should have made inquiry, and by not making inquiry the silence of the Plumbing Company was not culpable.

The testimony is not clear as to the Plumbing Company's knowledge of the defective foundation. Kelly stated, in effect, that he discovered that the Iron Works was remodelling it in a defective manner, which was without his consent, and that the Iron Works assured him it would be fixed and that he found out its condition after the collapse. We think it fair to presume from all the evidence that he relied on the assurance of the Iron Works that it would be properly fixed, and supposed it had been done until he discovered the contrary after the collapse of the tower. Under these circumstances it was not incumbent upon the Plumbing Company to notify the Guaranty Company of this circumstance.

The plaintiff in error insists that there was a novation of the contract, of which it was not informed, by the extension of time for the completion of the work, as provided by the contract of May 2, 1903. Such change, in this respect, had been made before the bond of the Guaranty Company was executed. It is true that the Plumbing Company did not notify the Guaranty Company of this change, but there is no evidence that said Guaranty Company was ignorant of that fact, and we think the inference is fair that a bond being executed for the faithful completion of the work long after the time for its completion had expired, the Guaranty Company was at least put on notice that an extension had been granted and is in no attitude to complain.

The evidence does not show that any agreement as to extension of time was made after the bond was executed. It is true the work was not completed at the expiration of the last extension, towit: January 20, 1904, but work continued until the succeeding March. This did not affect the liability on the bond. The acquiescence of the Plumbing Company in the continuation of the work by the Iron Works could not have resulted to the injury of said Guaranty Company.

The contention of plaintiff in error that the amended petition set up a new cause of action which was barred by the statute of limitation, is not well founded. The original petition was to recover on the bond

afterwards made a part of the amended petition. The date of the bond in the original petition was not correctly stated and the amended petition was for the purpose of curing that error. There was no such dissimilarity in the two petitions as to cause surprise to or mislead the Guaranty Company, as it was not pretended that it had ever executed any other bond to the Plumbing Company, guaranteeing the performance of the Iron Works' contract. Our courts have frequently held that an amendment correcting dates stated in the original petition does not constitute a new cause of action. Turner v. Brown, 7 Texas, 489; Morehouse v. Texas T. Ry. Co., 17 S. W., 1086; Wiebusch v. Taylor, 64 Texas, 53; First Nat. Bank v. Stephenson, 82 Texas, 435; St. Louis, A. & T. Ry. Co. v. Evans, 78 Texas, 369.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.