HARRIS COUNTY V. JAMES CHARLTON, COUNTY TREASURER, ET AL.

No. 3738.   Decided June 24, 1922, Nov. 29, 1922.

(243 S. W., 460.)

### 1.—Fees of Office—County Treasurer—Commissions—School Fund.

The limitation of $2000 placed on the compensation the Commissioner's Court is permitted to allow the County Treasurer by way of commissions on money received and paid out applies to his commissions as treasurer of the school fund as well as to those on the county funds proper (Rev. Stats., 1911, arts. 3873-3875, Rev. Stats., 1895, arts. 2467-2469). When his commissions from both sources retained in any one year have reached $2000 he is not entitled to retain further commissions from either fund.   (pp. 26-28).

### 2.—Same—Statutes Reviewed.

The various statutes regulating the compensation of the county treasurer from the creation of that office are reviewed in determining the effect of articles 3873-3875, Rev. Stats., 1911, on the commissions to which he is entitled as treasurer of school funds.   (pp. 23-26).

### 3.—Jurisdiction of Supreme Court.

The Supreme Court has power, in a case properly before it on writ of error, to determine all questions of law presented in the Court of Civil Appeals by the party prevailing there, so far as necessary to a determination of the correctness of the judgment there reached. It will not remand to the Court of Civil Appeals for its determination of such questions, though it did not pass thereon. Holland v. Nimitz, 111 Texas, 419, followed.   (p. 26).

### 4.—Treasurer—Action on Bond—School Fund.

The right of the county to recover on a bond given by the county treasurer for handling funds of the county proper, because of the retention by him of commissions on school funds received and paid out after his limit of two thousand dollars in commissions for the year from both sources had been reached, is questioned, the two funds being protected by separate bonds. (p. 27).

**5.—Same—Limitation.**

The right of the treasurer to have a deduction, from the amount of commissions wrongfully retained by him, of such as had been collected more than four years before suit upon his bond, on the ground that this was barred by limitation, is also questioned.   (p. 27).

**6.—Treasurer—Commissions—County Funds—School Funds.**

The County Treasurer, in handling the county and the school funds, was entitled to his commissions on each fund respectively until their total reached the limit of $2000, when his right to retain further commissions from either ceased.   (p. 28).

**7.—Bonds for Successive Terms.**

Where the treasurer's default covers different terms of office, protected by different bonds for county and for school funds, and it is difficult to determine the adjustment of liability between them, the several bondsmen had the right to have the liabilities as between them settled in one action.   Skipwith v. Hurt, 94 Texas, 322.   (p. 29).

**8.—County Treasurer—Limitations—School Fund.**

Limitation does not run in favor of the County Treasurer and the sureties on his bond against the county as trustee of the public school fund.   Delta County v. Blackburn, 100 Texas, 51, followed.   (p. 29).

Error to the Court of Civil Appeals for the Ninth District in an appeal from Harris County.

Harris County sued James Charlton, County Treasurer, and the sureties on three of his official bonds.   Judgment was for plaintiff and defendants appealed.   The judgment was reversed and the cause remanded with instructions (234 S. W., 135).   The county obtained writ of error thereon.

*E. R. Campbell,* and *Louis, Campbell & Nicholson,* for plaintiff in error.

Act of May 13, 1846, sec. 9; Crossland v. Cherokee County, 31 Texas, 142; Const. of 1876, Art. 16, sec. 4; Act of 1876, 8 Gammel's Laws, p. 1120, sec. 15; Rev. Stats., 1879, Art. 2405; Act of April 7, 1879, amending same; Acts of 1891, p. 147, sec. 47; Curtin v. Harris County, 203 S. W. 457; Ward v. Harris County, 209 S. W. 793; Bastrop County v. Hearn, 70 Texas, 563; Presidio County v. Walker, 29 Texas Civ. App., 609; Davenport v. Eastland County, 94 Texas, 279; Opinions of Atty-Genl., 1912-1914, p. 159, Id., p. 216; Id. 220, 221, 223; Id., 580; Opinion of Atty-Genl., of May 1, 1919, to County Auditor of Harris County.

The county has the right to sue for and recover commissions received and retained by the County Treasurer in excess of the $2000 per annum fixed by statute as his maximum compensation.   Ellis County v. Thompson, 95 Texas, 22; State v. Moore, 57 Texas, 320; Hallman v. Campbell, 57 Texas, 54; McLennan County v. Boggess, 104 Texas, 311; Torbert v. Hale County, 131 Ala., 143, 30 So., 453; Troup v. Morgan County, 109 Ala., 162, 19 So., 503; Washita County

v. Brett, 124 Pac., 57; Finley v. Oklahoma Ter., 12 Okl., 621, 73 Pac. 273; Broaddus v. Pawnee County, 88 Pac., 250; United States v. King 147 U. S., 676; Anderson v. Board of Commissioners, 143 Pac., 1146; Sanderson v. Pike County, 195 Mo., 598, 93 S. W., 944; State v. Patterson, 132 S. W., 1185; Bexar County v. Linden, 110 Texas, 339; Watson v. El Paso County, 202 S. W., 126; 29 Cyc., 1426.

If appellant Charlton collected his commissions from the school fund after he had collected his full $2000 each year from the county as claimed by him, then he was not authorized or entitled by law to collect or receive such commissions, having already received his maximum compensation, and he unlawfully withheld such amount of money from the school fund, and the county had the right to sue for and recover the same. Kempner v. County of Galveston, 73 Texas, 221; Burk v. Galveston County, 76 Texas, 267; Kempner v. Galveston County, 76 Texas, 450; Poole v. Burnet County, 97 Texas 85; Watson v. El Paso County, 202 S. W., 127.

If it be held that the Treasurer was not authorized and entitled to collect and receive commissions from the county and from the school fund after he had received such commissions up to the aggregate amount of $2000 in each year, then the amounts of such commissions thereafter collected, received and retained by him, both from the county and from the school fund, were unlawfully received and retained by him, and the county is entitled in this suit to recover the amount of such commissions so unlawfully received.

The burden was upon the different sets of sureties on the official bond of appellant Charlton to show under which bond, and during which term of office, the shortage or unlawful conversion by the Treasurer occurred. Skipwith v. Hurt, 58 S. W., 192; Screwmen's Benev. Assn. v. Smith, 70 Texas, 168; Skipwith v. Hurt, 94 Texas, 322; Nueces County v. Gussett, 213 S. W., 727.

*George L. Charlton and Carothers & Brown,* for defendants in error.

The $2,000 limitation in Article 3874 does not apply to fees collected by the County Treasurer from the School fund for services rendered by him in his ex-officio capacity as Treasurer of the school fund. R. S. 1911, Arts, 3873, 3874 and 3875; R. S. 1895, Arts. 2467, 2468 and 2469; R. S. 1879, Arts. 2403, 2405, 3725 and 3726; Arts. 1846, pp. 338-340; Arts. 1878, p. 292; Arts. 1891, p. 147; P. D., Arts. 3473, 3477 and 3479; Davenport v. Eastland Co., 94 Texas 280; House v. Dallas, 96 Texas, 594,

The County Treasurer is not required by law to pay into the county treasury moneys that he collects from the school fund in his capacity as treasurer of the school fund, even though he has previously collected from the county the $2,000 which the Commissioner's Court is authorized to allow him.

The undisputed evidence shows that during each of the years mentioned in plaintiff's petition Charlton collected his full $2,000 from the County long before he made any collections whatever from the school fund, so, even if it should be conceded that he was not entitled to collect more than $2,000 from all sources, it is clear that the commissions collected from the county were rightfully collected, and suit cannot be maintained by the county to recover funds wrongfully collected from the school funds.

There is no more reason for relieving the county of paying part of the commissions earned by the county treasurer because he collected commissions from the school fund, than there is for relieving the school fund from commissions earned by the county treasurer because he had already collected commissions earned in handling the general county funds.

It is error for the court to overrule a special exception challenging the plaintiff's petition because it fails to state the dates and items of the amounts wrongfully collected by the defendant where plaintiff's petition fails to itemize the dates and amounts of the collections wrongfully made by the defendant from the plaintiff, and especially is this true where part of period covered by the plaintiff's petition is more than four years prior to the filing of plaintiff's suit. International & G. N. Ry. Co. v. Pape, 73 Texas, 501.

Where the plaintiff sues three different sets of bondsmen for money alleged to have been wrongfully collected by their principal, and fails to show how much was collected during the period covered by any one of these bonds, the plaintiff is not entitled to judgment against any of the bondsmen.

A bondsman is not liable for shortages occurring before he became bondsman and unless the evidence shows what shortages occurred after he became bondsman the plaintiff cannot recover.

MR. JUSTICE PIERSON delivered the opinion of the court.

After having made some slight corrections in the statement of the case by the Court of Civil Appeals, we adopt same, as corrected, as a statement of the case.

The appellee, Harris County, instituted this suit against appellants, James Charlton, as County Treasurer of the County, and also against the sureties on three of his official bonds as County Treasurer, to recover $5772.93 claimed to be due the county by Charlton. The cause was tried before the court without a jury, and judgment was rendered in favor of Harris County, the appellee, and against appellant, Charlton, and all of the sureties on each of his three bonds as such County Treasurer for $1819.98, which was for the following items:

Commissions collected from school fund ............ $1001.50
Amount overpaid as interest on bonds .............. 11.75
A shortage alleged to have occurred somewhere between

November 23, 1906, and November 30, 1910, the date being
unknown  ..............................................  229.58
    Interest from January 1, 1911 on all such sums ......  576.15

                         Total                      1818.98

It was agreed by the parties in the trial court, and thereupon the trial court found as a fact, that appellant Charlton was the duly elected and qualified Treasurer of Harris County from November 23, 1906, to November 30, 1910, and that during that time he, as Treasurer of the available and permanent school funds of the county, collected as commissions for handling same, the sum of $1499.02. It was further agreed, and the trial court found, that this amount was collected out of the available school fund, and that in addition to this, Charlton retained out of the general funds belonging to Harris County, commissions in the sum of $2000 per year for each year during said period. The trial court further found that the said Jas. Charlton collected commissions from the County of Harris for the year of 1907, the sum of $497.52 more than the $2,000 maximum allowed as provided by law, and that such collection was made more than four years before the filing of this suit by plaintiff in this cause, and that claim of the county therefor to that extent was barred under the four years' statute of limitation. He deducted this amount from the $1499.02 and gave judgment for the county of Harris for $1001.50 on commissions wrongfully collected from the school fund, with six per cent interest thereon from January 1, 1911.

The first assignment of error complains of the action of the trial court in allowing a recovery by Harris County for any part of the commissions collected and retained by Charlton for handling the school fund of the county, appellant claiming in that connection that the undisputed evidence showed that he had a legal right to the commissions so collected and retained by him for handling the school funds of the county, in that the $2,000 limitation on the County Treasurer's fees does not apply to the fees collected as Treasurer of the school fund.

Under this assignment, the proposition is asserted by appellant that Article 3875, Revised Statutes, limiting County Treasurer's compensation to $2,000, has no application to the fees collected by the County Treasurer from school funds for services rendered by him in his *ex officio* capacity as Treasurer of such funds. On the contrary, the counter proposition asserted by the appellee, Harris County, is that the limitation of $2,000 per annum as the maximum compensation to a County Treasurer, applies to and includes commissions received by him for handling such school funds, and that such limitation covers any and all fees and commissions received by such officer from any and all sources.

The Court of Civil Appeals held that the commissions allowed a county treasurer for handling public free school funds were not included in the limit of $2,000 and that the treasurer was entitled to retain them.

In order that our holding in this case may be clearly understood it is necessary that we briefly review the Legislative enactments leading up to the present statutes on the issue involved here.

The office of county treasurer was created by the Legislature in 1846 and provision made for compensation for the treasurer.

In 1854 an act was passed providing for a comprehensive school system for the State; for the formation of school districts and for school trustees and for the control and management of school funds. It also provides that the county treasurer should give a separate bond for handling the school funds.

In 1876 an act was passed to fix and regulate the fees of officers of the State. Section 15 of this Act reads as follows:

"Sec. 15. County Treasurers shall receive the following fees: The County Treasurer shall receive not more than two and one-half per cent. on all sums received by him; and not more than two and a half per cent. on all sums paid out by him; but shall receive not more than one per cent. for receiving and paying out moneys belonging to the school fund. The commissions of the County Treasurer shall be fixed by the County Commissioners' Court, within the limits prescribed in this Act; provided that the County Treasurer shall receive no commissions for receiving money from his predecessor or for paying over money to his successor in office; provided, further, that the COMPENSATION allowed to any County Treasurer shall not exceed three thousand dollars per annum in any county of this State."

It could hardly be contended that the limitation of $3000 in the above quoted acts does not apply to all the subject-matter therein contained, including the commission of one per cent, for receiving and paying out all moneys belonging to the school fund. It is one complete whole; a single act and paragraph of the law.

In the revision of the statutes of 1879 the above quoted Section 15 was brought forward and incorporated in these articles to-wit:

"Art. 2403. The County Treasurer shall receive commissions on the money received and paid out by him, said commissions to be fixed by order of the Commissioners' Court as follows: for receiving and paying out moneys belonging to the school fund, not exceeding one per cent; for receiving all other moneys for the county, not exceeding two and one-half per cent, and not exceeding two and one-half per cent for paying out the same."

"Art. 2404. The County Treasurer shall receive no commissions for receiving moneys from his predecessor nor for paying over money to his successor in office."

"Art. 2405. The commissions allowed to any county treasurer shall not exceed two thousand dollars annually."

It will be observed that in Article 2405, the sum total allowed County Treasurers for performing the services enumerated in Section 15 of the Acts of 1876 and as brought forward in Articles 2403 and 2404 in the revision of 1879, was reduced from $3000 to $2000 in accordance with an amendment to said Article 2405 as reported by the codifiers. This amendment was enacted by the Legislature on April 2, 1879, and as amended was incorporated in the Revised Statutes of 1879 with Articles 2403 and 2404.

The Legislature in 1879 also passed an educational act establishing a system of public free schools throughout the State. That act continued the county treasurer as the custodian of the free school fund for the county and provided that he should be allowed compensation as provided in Article 2403.

In the school Act of 1884 in connection with the other provisions of that act the Legislature again provided that the county treasurer should receive compensation as provided in Article 2403.

In 1891 the Legislature amended the Act of 1884 and took away the discretion theretofore granted to the Commissioners' Court to allow a commission not to exceed one per cent. but arbitrarily fixed the commission allowed the treasurer at one-half of one per cent for receiving and disbursing the school fund of the county.

The provisions of the statutes thus amended were set forth in the revision of the statutes of 1895 as Articles 2467, 2468 and 2469, and have not been amended or changed since and therefore control the issue here involved. In Vernon's Sayles' Texas Civil Statutes 1914 they are Articles 3873, 3874 and 3875.

In order that it may be made apparent that the application of the limit of $2000 in commissions allowed to the treasurer under Article 2469, Revised Statutes 1895, include commissions for handling the public free school funds we quote the three articles as follows:

"Art. 2467. (2403) The county treasurer shall receive commissions on the moneys received and paid out by him, said commissions to be fixed by order of the Commissioners' Court as follows: For receiving all moneys, other than school funds, for the county, not exceeding two and one-half per cent, and not exceeding two and one-half per cent for paying out the same; provided, however, he shall receive no commissions for receiving money from his predecessor nor for paying over money to his successor in office."

"Art. 2468. The treasurers of the several counties shall be treasurers of the available public free school fund and also of the permanent county school fund for their respective counties. The treasurer of the several counties shall be allowed for receiving and disbursing the school funds one-half of one per cent for receiving, and one-half of one per cent for disbursing, said commissions to be paid out of the available school fund of the county; provided, no commissions shall be paid for receiving the balance transmitted to him by his predecessor, or for turning over the balance in his hands to his

successor; and provided further, that he shall receive no commissions on money transferred."

"Art. 2469. (2405) The commissions allowed to any county treasurer shall not exceed two thousand dollars annually."

From the inception of the legislation on the subject and until the public free school funds were placed in depositories by the Act of 1909 the Legislature dealt with the commissions allowed the county treasurer for collecting and disbursing said funds along with and in connection with that officer's services in collecting and disbursing the county's fund and the limit of $2000 uniformly followed both provisions and necessarily included both.

The conclusion is irresistible that said limit applies to and includes the commissions allowed the treasurer for handling the county's funds and also for handling the free school funds. Thus the Legislature fixed a maximum of $2000 which the county treasurer might receive and retain from the county funds and the school funds combined.

The Court of Civil Appeals considered that this issue controlled the entire case and therefore discussed no other issue but reversed and remanded the case to the district court for new trial with instructions.

Under our holding in the case of Holland v. Nimitz et al. (111 Texas, 419, 239 S. W., 185) opinion by Associate Justice GREENWOOD delivered March 15, 1922, it is within our jurisdiction and becomes our duty to pass upon "all questions of law assigned in his petition by the losing party in the Court of Civil Appeals," and upon "all assignments of the prevailing party in the Court of Civil Appeals presenting questions of law, to ascertain what judgment ought to have been rendered in that court." "The Supreme Court will not refer assignments presenting questions of law within its jurisdiction back to the Court of Civil Appeals simply because such court failed to determine same; but, in the interest of speedier termination to litigation, the Supreme Court will itself determine the assignments." Southern Pac. Co. v. Walters, 110 Texas, 496, 221 S. W., 264.

Upon a thorough examination of the record it appears that the issues not disposed of by the Court of Civil Appeals involve issues of law only. The case was tried upon agreed facts with the exception of a small amount of oral testimony which was uncontradicted.

The most important of these issues is that plaintiff in error, the County of Harris, brought its suit against defendant in error Charlton and his bondsmen on his bond as county treasurer to recover for an alleged shortage in the available school fund and also for commissions alleged to have been wrongfully collected from school fund after he had received the amount of $2000 allowed by law each year. Said shortage and collections were alleged to have accrued between November 23, 1906 and November 30, 1910. The bond sued

on was his bond as county treasurer and not his bond given to protect the available public free school fund as provided by law.

Defendant in error's second assignment of error in the Court of Civil Appeals is as follows: .

"The court erred in rendering judgment in favor of the plaintiff for any part of said $1499.02 item, because the undisputed evidence shows that same was collected from the available school fund and not from any funds belonging to the County of Harris or of which it had legal custody, and this suit was not based on any bond given by the defendant, Charlton, in his capacity as Treasurer of the school fund, but was based entirely on his bonds as Treasurer of the general county funds."

The trial court declined to give the county of Harris judgment for a shortage of $1263.16 due by the treasurer to the available school fund because, as he sets out in his findings, the county has no recoverable interest in said shortage, and if mistaken as to that, because the county did not sue upon the bond given by the treasurer to secure the performance of his duties as to the available school fund. Yet he gave the county judgment for the $1499.02 commissions on the school funds that he had collected over and above the $2000.00 per annum limit. From this $1499.02 commissions wrongfully retained he deducted $497.52 that the treasurer had also wrongfully collected and retained from county funds over the $2000 limit in 1907, because as according to his findings, it was barred by the four years statute of limitations. It is not apparent to us why this $1499.02 should be reduced by the amount of $497.52 which, though barred by limitation, was itself an amount wrongfully withheld by the treasurer.

Also it is not apparent why the county was held to be entitled to recover on the treasurer's bond *as county treasurer* for commissions wrongfully withheld from the *school fund* when these bondsmen were under no obligation to protect the school funds. As stated in his conclusions the law requires a separate bond for the protection of the available school fund and his bondsmen *as county treasurer* for handling *county funds* have no connection therewith.

As trustee for the available school fund, the county was entitled to sue for and recover from the treasurer and upon his bond given for the protection of the school fund, such shortage shown to exist in said fund and such commissions shown to have been collected and retained by him after he had reached the limit of $2000.

The facts show that defendant in error Charlton collected his limit of $2000 between December 30th and May 1st each year from commissions on county funds before he made any collection of commissions from the school funds; that the fiscal year as school treasurer ends the last of August. Plaintiff in error, Harris County, insists that both the county and school funds should pay a part of the treasurer's salary in commissions and that therefore it is

entitled to recover and receive as its own these commissions wrongfully collected from the school fund.

The commissions accrued to the benefit of the county treasurer as he handled the various funds entrusted to his care. Under Article 928, Revised Statutes 1895 he was required to make reports to the County Commissioners' Court at each regular term thereof, but he was handling both the funds of the county and of the available school fund from his induction into office and he was entitled to commissions upon the funds so handled as they were received and disbursed by him.

When his limit of $2000 was reached in collecting and disbursing these funds, in whatever month, then his right to collect and retain further commission from either fund ceased.

Defendants in error in their motion for new trial in the district court and in their assignments in the Court of Civil Appeals urgently insist that the pleadings and proof fail to allege or disclose when the items constituting the various sums sued for were wrongfully collected, and fail to show how much was collected and not accounted for during the period covered by any one of the three bonds, and on account thereof liability could not be fixed against any one set of the treasurer's bondsmen. Also, on account thereof they were deprived of the right to have any item stricken from the recovery that became delinquent more than four years before the filing of the suit.

Art. 1205, R. S. 1895, provides:

"In any suit brought by the State of Texas, or any county of said State, against any officer who had held an office for more than one term and has given more than one official bond, the sureties on each and all of such bonds may be joined as defendants in one and the same suit, whenever it is alleged in the petition that it is difficult to determine when the default sued for occurred and which set of sureties on such official bond is liable therefor."

Before this article was enacted, Chief Justice STAYTON in the case of Screwmen's Benevolent Association v. Smith, 70 Texas, 168, 7 S. W., 793, said:

"It would seem, when actions have to be brought against two sets of sureties on official or like bonds, given by a principal and different sureties, to secure the faithful performance of duty by the principal, for different terms, the one succeeding the other, that one action against the principal and all the sureties ought to be permitted when the plaintiff is unable to state and prove clearly where a misappropriation of funds occurred, and it may be that legislation upon this subject ought to be had."

From the agreed facts upon which the case was tried we quote the following:

"It is agreed that all the matters involved in this litigation were acts transpiring and errors occurring by the defendant, James

Charlton, in his official capacity as County Treasurer of Harris County, Texas, and as Treasurer of the Permanent and Available School Funds of said Harris County, Texas, and that by reason of his tenure of office, from the 23rd day of November, 1906, until the 30th day of November, 1910, it is extremely difficult to ascertain and determine just at what period of time any one of the several transactions making up the total involved in the several funds may have occurred.''

The bondsmen of the different bonds had the right and opportunity to have the liabilities between them settled in this action. Skipwith et al. v. E. S. Hurt, County Judge et al., 94 Texas 322, 60 S. W., 423.

As to the issue of limitation, all items sued for which were barred by the four years statute of limitation were excluded from the judgment of the trial court. Limitation, however, would not run in favor of defendant in error Charlton and his bondsmen against the County of Harris as trustee of the public free school, fund. Delta County v. Blackburn, 100 Texas, 51-60, 93 S. W., 419, and cases therein cited.

We find no error in the judgment of the district court as to the item of shortage $229.58 and the item of overpaid interest on bonds $11.75 in favor of Harris County against defendant in error Charlton and his bondsmen as county treasurer. It is, therefore, ordered that the judgment of the district court be affirmed in so far as it awards a recovery to Harris County of said items of $229.58 and $11.75, with interest and costs of the district court, and that in all other respects said judgment of the district court be reversed. It is also ordered that the judgment of the Court of Civil Appeals be reversed, and that this cause be remanded to the district court for further proceeding in accordance with this opinion.

### ON REHEARING.

In their motion for rehearing defendants in error call our attention to the item of $497.52, which the trial court found was wrongfully retained from the County funds by defendant in error Charlton, but which was found by said Court to be barred by limitation.

The trial court having found and adjudged that this amount of $497.52 was barred by limitation, it would have been proper for us to have affirmed the judgment of the trial court as to this item also.

We therefore grant the rehearing as to this item, and affirm the judgment of the trial court as to it. In all other respects the motion for rehearing is overruled.

CHIEF JUSTICE CURETON took no part in the decision of this case.