**FIRST NAT. BANK OF HUNTINGTON BEACH v. VAN HORN et al.**

(No. 2909.)

Court of Civil Appeals of Texas. Amarillo. Nov. 30, 1927.

Rehearing Denied Jan. 4, 1928.

**1. Appeal and error ☞598—Original documents, plots, sketches, etc., may not be sent to Court of Appeals as part of statement of facts or bill of exception (Rev. St. 1925, art. 2239).**

Original documents, plots, sketches, etc., because of Rev. St. 1925, art. 2239, may not be sent to the Court of Appeals either separately or in their original form as parts of either a statement of facts or a bill of exception; Supp. to Sayle's Civ. St. 1904–1906, p. 111 (Laws 1905, c. 112, § 5), which permitted this, having been repealed.

**2. Appeal and error ☞544(1)—Assignment relating to refusal to postpone trial must be overruled, in absence of bill of exception taken.**

Assignment relating to the trial court's refusal to postpone the trial must be overruled, in the absence of a bill of exceptions taken to such refusal.

**3. Appeal and error ☞1039(2)—That certain facts were pleaded in supplemental petition which should have been alleged in original pleading held not ground for reversal, where injury was not shown.**

That certain facts were pleaded in a supplemental petition which should have been alleged in the original pleading held not ground for reversal, where the appellant was not shown to have been injured thereby.

**4. Appeal and error ☞544(1)—Impropriety of permitting one to testify at trial could not be considered on review, where not supported by bill of exception.**

In an error proceeding, in which the court's permitting a certain person to testify was urged as error, held, that such contention could not be considered by the reviewing court since it was not supported by a bill of exception.

**5. Corporations ☞123(11)—In absence of estoppel, pledgee of stock from one having neither title nor authority to pledge acquires no title against owner, though innocent.**

In the absence of some element of estoppel, a pledgee of stock from one who has no title or authority to pledge it acquires no title as against the real owner, though the pledgee had no knowledge that such person was not the owner of the pledged property.

**6. Corporations ☞123(11), 149—Rule that, if owner of corporation stock holds out another or allows him to appear as having disposing power, innocent transferee is entitled to protection does not apply to purchaser or pledgee acting in bad faith.**

The rule that, if an owner of stock holds out another or allows him to appear as having full power of disposition thereof, an innocent transferee from such transferor is entitled to be pro-

tected as a bona fide holder, though the transferor exceeded his authority in making the sale or transfer, does not apply in favor of a purchaser or pledgee who acts in bad faith, as where he obtains the stock with knowledge of circumstances sufficient to put him on inquiry as to such facts.

**7. Corporations ☞123(11)—Apparent erasure of transferee's name on stock certificate pledged and insertion of pledgor's name held notice to pledgee of questionable title.**

In action by the owner of certificates of stock against a bank, to which they had been pledged as collateral by one having neither ownership nor authority to pledge, for the recovery of such certificates which defendant claimed to be holding as collateral for a loan to pledgor, the fact that there was an apparent erasure of the name of a transferee on certificate and the insertion of pledgor's name, being a material alteration and in a sense forgery, constituted notice to the pledgee that the pledgor's title was questionable.

**8. Corporations ☞123(11)—Apparent alteration and condition of one stock certificate pledged held to be constructive notice of defect in pledgor's title as to all certificates pledged.**

In an action by the owner of stock certificates against a bank, to whom they had been pledged by a third person as collateral, for the recovery of such certificates on the ground that the pledgor had neither title in them nor authority to pledge, held, that the fact that there was an erasure of the name of a transferee on one of the certificates and the insertion of the name of the pledgor was notice to the pledgee of questionable title in the pledgor not only as to that one certificate, but as to all certificates pledged with it.

**9. Corporations ☞123(11)—Pledgee's failure to make inquiry before lending money on stock certificates purporting to have been transferred years before issuance held to impeach good faith.**

In an action by the owner of stock certificates to recover them from a bank to which they had been pledged as collateral for a loan by a person having neither property in them nor authority to pledge, wherein the bank claimed the right to retain such certificates as bona fide holder for value, held, that the fact that the transfer of one of the certificates was dated four years before the date of its issuance and the other two showed that they were transferred two years before they were issued, together with the failure of the bank to make inquiry before negotiating the loan, tended to impeach the bank's good faith in accepting them as collateral.

**10. Corporations ☞123(24)—Whether pledgee of stock certificates had constructive notice of defect in pledgor's title generally is fact question.**

Whether the pledgee of stock certificates has constructive notice of the defect in pledgor's title, or whether he is an innocent holder of the property pledged, is generally a question of fact.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**11. Pledges ⊙⟶24—Pledgee's lien must rest upon faith of collateral pledged.**

It is a fundamental rule of the law of pledges that the pledgee's lien must rest upon faith of the collateral pledged, else the contract is not complete.

**12. Corporations ⊙⟶123(11)—Stock certificate pledgee held not holder in good faith where he took collaterals from one known not to be owner.**

In an action by the owner of stock certificates against a bank to which they had been pledged by one having no authority, for the recovery thereof, wherein the bank urged as a defense that it was a bona fide holder of the certificates, *held*, that the bank was not a bona fide holder, since it had taken the collaterals from one who was known not to be the true owner.

**13. Corporations ⊙⟶123(11)—Pledgee of certificates unauthorizedly pledged by one not owner held not entitled to retain certificates against owner, though innocent, where pledgee could collect from pledgor.**

Where the owner of stock certificates sought to recover them from a bank to which they had been pledged as collateral for a loan by one having no authority to pledge them, wherein the bank asserted that it was a holder in good faith, *held*, that even if it were a holder in good faith it could not, under such circumstances, retain the collateral where the evidence showed it could collect the amount of money it had lent from the pledgor himself.

Error from District Court, Donley County; C. C. Small, Judge.

Action by Rosa Van Horn against the First National Bank of Huntington Beach and others. Judgment for plaintiffs, and the named defendant brings error and files a motion praying an order directing the district clerk to send up certain original stock certificates introduced in evidence on trial. Motion overruled, and judgment affirmed.

Underwood, Strickland & Thomerson, of Amarillo, for plaintiff in error.

A. T. Cole, of Clarendon, for defendants in error.

HALL, C. J. Plaintiff in error bank has filed a motion not verified, praying that this court enter an order directing the district clerk of Donley county to send up four original certificates of stock, which were introduced in evidence upon the trial of the case.

The motion recites that plaintiff in error has made repeated requests of the trial court for an order directing the district clerk to send these original certificates to this court for our inspection, and that such action is agreeable with opposing counsel. The certificates themselves have been copied into the statement of facts, but counsel for plaintiff in error insists that an inspection of the certificates by this court will show the discrepancies by which it is insisted plaintiff in error was not put upon inquiry because of such discrepancies.

The motion must be overruled. By the Act of 1905 (Supp. to Sayles' Civil Statutes 1904–1906, p. 111; Laws 1905, c. 112, § 5), it was provided, in the stenographers' bill, that:

"Any original documentary evidence, sketches, maps, plats or other matters introduced in evidence * * * may be made a part of the record of said cause by written direction of the court, which may be sent up in the original form if requested by either party to the suit."

When this act was amended in 1909 (Laws 1909 [Ex. Sess.] c. 39), this provision was omitted. It is not incorporated in any subsequent amendment of said act. Even while the 1905 statute was in force, it was held that original documentary evidence could not be sent up to the Court of Appeals except by written direction of the trial court. Pirtle v. Nell, 43 Tex. Civ. App. 418, 97 S. W. 707; Newnom v. Williamson, 46 Tex. Civ. App. 615, 103 S. W. 656.

[1] Neither before the enactment of said provision of the statute nor since its repeal has it been permissible for original documents, plots, sketches, etc., to be sent to the Court of Appeals, either separately or in their original form, made parts of either a statement of facts or a bill of exception.

Revised Statutes, art. 2239, specifically provides that such original instruments shall be copied into the statement of facts, and unless so copied they are not entitled to consideration. See McLarty v. Prior (Tex. Sup.) 2 S. W. 752; Houston Oil Co. of Texas v. Myers (Tex. Civ. App.) 150 S. W. 762.

The defendant in error, Mrs. Rosa Van Horn, filed this suit in the district court of Donley county against the First National Bank of Huntington Beach Cal., the First National Bank of Clarendon, Tex., and Alfred Ashby, for title and possession of four certificates of capital stock in the said last-named bank, alleging that she was the owner thereof, and fixing their value at $8,000. She alleged in her original petition, in substance, that she was a widow residing in Los Angeles county, Cal.; that both of the defendant banks were national banks, and that the defendant Ashby was a resident citizen of Orange county, Cal.; that she was the owner of stock certificate No. 59 for five shares of stock, stock certificate No. 58 for five shares, stock certificate No. 36 for ten shares of stock, and stock certificate No. 15 for twenty shares of stock—all of said certificates representing the capital stock of the First National Bank of Clarendon, each of the shares being of the par value of $100; that the defendant Ashby wrongfully gained possession of said certificates without plaintiff's consent; that such certificates had been indorsed in blank for transfer by plaintiff, and defendant Ashby

⊙⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

fraudulently caused his name to be written in the blank assignments upon the back of said certificates and delivered said certificates to the First National Bank of Huntington Beach, and through said bank, to the First National Bank of Clarendon, for transfer upon the stock book of said last-named bank; that each share of stock was of the reasonable market value of $200; that said certificates were in the possession of said First National Bank of Clarendon, and said bank was threatening to cancel said certificates and reissue certificates to the defendant Ashby; that the bank of Huntington Beach claimed to have some interest in said stock, or was an agent of Ashby, and through Ashby's instigation, was wrongfully seeking to cause said stock to be canceled and reissued in the name of Ashby; that if this was done, plaintiff would lose the value of her stock; that she had notified the Clarendon Bank that she was the owner of the stock, and that neither of the other defendants owned any interest in the same; that she had demanded of the Clarendon Bank the delivery of the certificates to her, which had been refused. She prayed that the Clarendon Bank be required to deliver the certificates into court, and that upon final hearing she be adjudged to be the owner of the stock, and that possession thereof be delivered to her, etc.

The Clarendon Bank answered, tendering the certificates of stock into the registry of the court, together with the accrued and unpaid dividends thereon in the sum of $320. It prayed for an order of court, directing it as to whom the stock and dividends should be delivered, and that it be discharged, with its costs.

The defendant Ashby made default, and an interlocutory judgment was entered against him on default day.

The Bank of Huntington Beach, plaintiff in error here, filed its first amended original answer, alleging that it was the innocent holder for value, of the certificates of stock described in plaintiff's petition; that it acquired them without notice of any infirmity in the title, in that plaintiff had indorsed the certificates in blank, which had been presented to it by the holder, Alfred Ashby, who was the apparent owner, and that Ashby had pledged said certificates as collateral security for a loan which this defendant had made him in the sum of $5,000; that in indorsing said certificates in blank and placing transferee in possession of the same, with the indicia of ownership thereof, the plaintiff was estopped to assert her ownership as against the rights of this defendant, who is an innocent pledgee; that on May 8, 1926, this defendant loaned the said Ashby $5,000, which was evidenced by a note of that date, maturing November 8, 1926, and to which note the said certificates of stock were attached as collateral security; that on the 21st day of May, 1926, this suit was filed;

whereupon the said Ashby refused to pay said note until said controversy could be adjusted and has yet failed to pay anything on the note, and therefore this defendant, as an innocent holder, is entitled to have possession of said certificates until the note is paid, and is further entitled to have proper certificates reissued in the name of Ashby, as requested, which is the usual and customary practice in handling pledged stock certificates by Los Angeles banks; that the defendant Ashby did not cause his name to be written in the assignment blanks, but that this defendant inserted the name of Ashby, who delivered the certificates to it, as it had a right to do, and it requested the Clarendon Bank to reissue stock in accordance with the ordinary course of business; that plaintiff was guilty of contributory negligence in indorsing and parting with said certificates. The prayer is that this defendant have judgment decreeing title of the certificates in it until said $5,000 note was paid, and further commanding the First National Bank of Clarendon to issue new certificates to it in the name of Alfred Ashby, and for general and special relief, etc.

The plaintiff, by supplemental petition, denied that the bank of Huntington Beach was an innocent pledgee of said stock, for the reason that it appeared from said certificates that they were issued many years prior to the date they were presented to the said Bank of Huntington Beach, and that the transfers thereon were executed by plaintiff and witnessed long years before they came into possession of said pledgee bank, and further for the reason that if said stock had passed out of the hands of plaintiff, with her consent and permission, it must have passed out on the day of the signature to the transfer; that in certificate No. 36 the name of one Thatcher had been partially erased; that certificate No. 58 was issued on November 29, 1924, but the indorsement in the transfer form on the back thereof was dated August 18, 1922, prior to the date of issuance, and that the same was true as to stock certificate No. 59; that certificate No. 15 showed to have been indorsed by plaintiff and witnessed by one A. A. Noble on August 18, 1922, so that it was easily apparent to the defendant Bank of Huntington Beach that there were such irregularities on the face of said stock as to put it upon notice and upon inquiry as to the right of said Ashby to pledge said stock. She further alleged that the stock had been taken from her possession by one W. D. Cowan, who had delivered the same to Ashby, for the defendant Bank of Huntington Beach, with intent to cheat, swindle, and defraud plaintiff out of the value thereof, and that said Bank of Huntington Beach acted in connection with said Cowan and with the defendant Ashby in conspiring and in attempting to defraud plaintiff of the value of said stock. It is further alleged

that the Bank of Huntington Beach had not been diligent in collecting its obligation against Ashby and was not entitled to recover possession of the stock.

The cause was tried to the court without the intervention of a jury and resulted in a judgment for plaintiff below for the title and possession of the stock, as against all defendants, and for the $320 accrued dividends, with directions to the clerk to deliver the same to plaintiff, and further direction to the First National Bank of Clarendon, upon the presentation of such stock, to reissue new certificates to plaintiff or her order, as she might direct. Such findings of fact and conclusions of law as relate to the questions considered will be hereinafter set out.

Defendant in error urges numerous objections to the plaintiff in error's brief, and, while many of the objections are well taken, the plaintiff in error's brief is sufficient to present the principal questions involved in the appeal.

[2] The first proposition challenges the action of the court in overruling the defendant's motion for a postponement or continuance on account of matters alleged in plaintiff's supplemental petition, which should have been set out in the amended original petition. No bill of exception was taken to this action of the court, and the proposition therefore cannot be considered. Old River Lumber Co. v. Skeeters (Tex. Civ. App.) 140 S. W. 511; 7 Vernon's Ann. Tex. Civ. Statutes, p. 228.

[3] That certain facts were pleaded in a supplemental petition, which should have been alleged in the original pleading, is not ordinarily reversible error, unless the appellant has been injured. No injury is shown in this case. J. I. Case T. M. Co. v. First National Bank of Decatur (Tex. Civ. App.) 160 S. W. 662; Britton v. Eagan (Tex. Civ. App.) 196 S. W. 972.

[4] It is insisted by the fifth proposition that the court erred in permitting Patrick, the president of the bank of Clarendon, to testify concerning irregularities in the certificates. This contention is not supported by a bill of exception and therefore cannot be considered.

The next contention to be considered is that the court erred in holding that the circumstances under which appellant acquired the stock were sufficient to put it upon notice and inquiry, which, if pursued, would have disclosed the nature of appellee's interest and would have shown that the bank was not and could not be a bona fide pledgee of the certificates.

[5] In the absence of some element of estoppel, a pledgee of stock from one who has no title or authority to pledge it acquires no title as against the real owner, though the pledgee has no knowledge that such person is not the owner thereof, and this rule has been held to apply even though the certificate is indorsed in blank and signed by the owner thereof, where there is no negligence on his part, whereby the pledgee had reason to believe that the pledgor was the owner of the stock or had authority to pledge it. 14 C. J. 733.

[6] The rule is that if an owner of stock holds out another or allows him to appear as having full power of disposition thereof, as where he delivers to him the certificate indorsed with a blank assignment and power of attorney authorizing a transfer on the books of the corporation, an innocent transferee from such transferor is entitled to be protected as a bona fide holder, although the transferor exceeds his authority in making the sale or transfer, and although the transfer is not registered on the books of the corporation or the power of attorney attached to the certificate is not in the form authorized by the stock exchange. But this doctrine does not apply in favor of a purchaser or pledgee who acts in bad faith, as where he obtains the stock with knowledge of circumstances sufficient to put him on inquiry as to such facts. 14 C. J. 783.

[7] The transfer upon the back of one of the certificates of stock showed that it had been transferred to one Thatcher by Mrs. Van Horn 19 years before the appellant bank acquired it. Upon its face, the evidence showed that Thatcher was the transferee thereof, and when this and the other certificates were presented to the appellant bank Thatcher's name was partially erased and the name of Ashby inserted without consulting Mrs. Van Horn, Thatcher, or the Clarendon Bank, so when the certificate came into possession of the appellant bank the transfer was filled out and the instrument, as an assignment, was complete. The erasure of the name of Thatcher and the insertion of Ashby's name was a material alteration, and, in a sense, constituted a forgery, and the condition of the transfer was notice to the bank, when not indorsed by Thatcher, that Ashby's rights were questionable. Denny v. Lyon, 38 Pa. 98, 80 Am. Dec. 463.

[8] The alteration of this one transfer and its condition affected all the other certificates. Sewall v. Boston Water Power Co., 4 Allen (Mass.) 277, 81 Am. Dec. 701.

[9] Moreover, the fact that the transfer of one of the other certificates was dated four years before the date of its issuance, and the other two showed that they were transferred two years before they were issued, presented impossible and equivocal conditions which tended to impeach their validity, calling for inquiry and an explanation, and the failure of the bank to make the inquiry before negotiating the loan tends to impeach its good faith.

[10-12] Whether these facts are constructive notice, sufficient to put the pledgee upon

notice, is generally a question of fact (Pope v. Beauchamp, 110 Tex. 271, 219 S. W. 447), and the court having decided it in appellee's favor, we do not feel warranted in setting his finding aside, especially since the president of the Clarendon Bank said that he felt, upon receipt of the certificates from appellant, justified in refusing to issue new certificates after he found the conditions above mentioned, which he described as "discrepancies and irregularities," upon the face of the certificates presented to him. This position is further strengthened by the fact that the vice president of the Huntington Beach Bank refused to lend the $5,000 to Leach upon the stock as collateral, but insisted upon making the loan only to a borrower whose financial statement showed his ability to repay without regard to the collateral tendered. This evidence tends to show that the loan was negotiated not upon the faith of the stock as collateral, but upon the personal and financial standing and statement of Ashby. It is a fundamental rule of the law of pledges that the pledgee's lien must rest upon the faith of the collateral pledged, else the contract is not complete. Leach had first presented the certificates to the bank and was refused a loan. Afterward the stock was tendered by Ashby, but it seems from the indorsements on the cashier's check that Leach was the real borrower, and that the transaction was negotiated in the name of Ashby. This being true, Ashby did not really own the stock, of which fact the bank had notice. Hedges v. Burke, 147 Tenn. 247, 247 S. W. 91, which holds that taking the collaterals from one who the pledgee knows is not the owner does not constitute it a good-faith holder.

[13] The court based his judgment in appellee's favor upon the further fact that the appellant had not used reasonable diligence to collect the note from Ashby. The note was not due when this suit was filed, but was past due at the time the judgment was rendered, and it was not shown that appellant had ever attempted to enforce the payment of the note. Ashby testified by deposition that he was ready to pay the note when the collaterals were returned to him, and there is not an intimation in the record that the appellant bank could not have enforced payment of the note by proper action. An interlocutory judgment by default had been taken against Ashby, which had foreclosed all claims he could have asserted to the collateral. He filed no motion for a new trial and has not appealed from that judgment. This is a case where the duty rested upon the pledgee to collect, if possible, the original debt from the pledgor before seeking to subject the securities to the payment of its indebtedness. Having failed to show that the collection of the $5,000 from Ashby would be, in any degree, jeopardized by being de-

prived of the possession of the stock deprives its contentions relative thereto of any real merit. The appellant did not seek to recover against Ashby in this suit, and, the evidence, without contradiction, showing that it can collect its indebtedness from Ashby, we think a proper judgment has been rendered in the court below.

No reversible errors are presented by the propositions not specifically disposed of, and the judgment is affirmed.